[Civ. No. 51532. Second Dist., Div. Four. Apr. 18, 1978.]

In re the Marriage of HANS D. and GUDRUN G. SCHWANDER.
ERNEST W. SCHWANDER, Appellant, v.
GUDRUN G. SCHWANDER, Respondent.

## Counsel

Aaron L. Lincoff for Appellant.

Chase, Rotchford, Drukker & Bogust and Kraig L. Zappia for Respondent.

## Opinion

**HUPP, J.**\*—The paternal grandfather of two minor children appeals from an order of the superior court which denied his request for temporary custody of the children, and instead awarded custody to their mother. We affirm the order.

Hans Schwander (hereinafter father) and Gudrun Schwander (hereinafter mother) were divorced by a decree of the circuit court of Illinois entered December 11, 1975. The decree awarded to the father custody of the two minor children of the marriage (Hans, Jr., born Dec. 27, 1967, and Eric, born Aug. 30, 1970). On or about May 1, 1976, the mother, who had remarried, filed, in the Illinois court, a petition for modification of the decree to award custody of the children to her. By an order entered July 29, 1976, after a contested hearing, the decree was so modified. Meanwhile, in June 1976, the father, with knowledge of the pendency of the petition for modification, sent the children to his parents (hereinafter grandparents) in California. The children arrived at the home of the grandparents (Santa Monica, California) in early June 1976, supposedly for a two-month visit. The grandparents, who had learned of the custody modification order, took the position that the mother was not fit to have custody of the children, and refused to allow them to return to her.

---

*Assigned by the Chairperson of the Judicial Council.

On September 20, 1976, the father, as petitioner, commenced a proceeding in the superior court of California, naming the mother as respondent. As part of that proceeding, the father moved for an order joining the grandparents, Ernest Schwander and Joanne Schwander, as parties[1] (see Family Law Rules, rule 1250 et seq.; Civ. Code, § 5159). In his declaration supporting the motion, the father stated: although he has served in the Air Force for 17 years, he is a resident of, and domiciled in, California; the decree of divorce was modified to award custody of the children to their mother; the grandparents have physical custody of the children, and refuse to return them to their mother in Illinois without an order of the court directing them to do so; it is therefore necessary that the grandparents be joined as parties.

The grandfather, Ernest Schwander, was served with summons and a copy of the motion and declaration re joinder. Thereafter, on November 10, 1976, he filed a responsive declaration in which he stated, on information and belief, that it would not be in the best interest of the children to return them to the custody of their mother in Illinois. He therefore requested that the court grant to him and his wife temporary custody of the children.

On November 15, 1976, the mother filed a "petition for warrant in lieu of writ of habeas corpus and command for arrest" of the father and the grandparents. In her petition, the mother alleged: in September 1976, the grandmother, with the cooperation of the grandfather and possibly the father, left her home, taking the children with her; she has since kept them hidden in a place unknown to the mother, who is lawfully entitled to their custody under the modified decree of the Illinois court; the children are threatened with irreparable injury before habeas corpus proceedings could be had in that the grandparents or the father may

---

[1]We are unable to understand from the record the exact nature of the proceeding, or to discern the provisions under which it was filed. The clerk's transcript furnished to us contains no document denominated a petition. We have sent for and examined the superior court file (Cal. Rules of Court, rule 12(a)). The initial document contained therein, "Notice of Motion and Declaration re Joinder (Marriage)," was filed September 20, 1976; no underlying petition is included.

The record shows that by a letter to the grandparents dated July 16, 1976, the father asked that they assume custody of the children "for an indefinite period of time." This letter was written three days after the hearing on mother's Illinois custody-modification application but before the formal order changing custody was signed. The record does not expressly reveal whether father knew the outcome of the hearing at the time the letter was written. Thus, the apparent purpose of the proceeding commenced by the father was to compel the grandparents and the mother to litigate the question of who, as between such parties, is entitled to custody of the children.

leave the jurisdiction of the court and secrete the children, thereby depriving them of the care of their mother. The petition concluded by requesting that a warrant be issued to the Sheriff of Los Angeles County commanding him to take the children into his custody and bring them before the court, and to arrest the father and the grandparents for having detained the children in violation of the valid Illinois custody decree. By order dated November 15, 1976, the mother's petition was granted. It was further ordered that the father show cause why custody should not be granted to the mother.

On November 19, 1976, the motion for joinder was granted. Hearing on the order to show cause was continued to December 7, 1976, and the grandfather was ordered to appear in court with the children on that date. He attended the hearing and was there represented by counsel; the children were not present. The mother and the father were represented by their respective attorneys. The grandmother was neither present nor represented by counsel. The record indicates that, although ordered by the court to be joined as a party, she never was served with process, and was secreting herself and the children.

At the hearing of December 7, the grandfather, called by the mother as her witness (Evid. Code, § 776), testified: in mid-September 1976, his wife left their home in Santa Monica and took the children with her to Costa Mesa; they lived there until late in November, when they "disappeared suddenly"; since that time, the grandfather has not heard from his wife or the children, and does not know their whereabouts. In response to the court's comment that it would "consider an emergency situation that would justify temporary custody in the grandparents," the grandfather presented evidence for the purpose of showing that the mother was unfit to have custody of the children. After all parties rested, the court stated its intention not to grant the grandfather's request for temporary custody unless the children were produced. After discussing the matter with counsel, the court continued the hearing to December 17 in order to give the grandfather a further opportunity to produce the children. On that date, the grandfather appeared without the children and without counsel, his attorney having in the meantime withdrawn. The court then denied his request for temporary custody, and awarded custody of the children to their mother. A formal order embodying such rulings subsequently was signed by the court and filed. The grandfather appeals from that order.

■ The propriety of the order is governed by the Uniform Child Custody Jurisdiction Act (hereinafter Act), adopted in California in 1974 and contained in Civil Code sections 5150 to 5174, inclusive. Section 5162 provides in pertinent part: "The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this title or which was made under factual circumstances meeting the jurisdictional standards of the title . . . ." This statute declares, as a matter of state law, that custody decrees of sister states will be recognized and enforced. Recognition and enforcement are mandatory if the state in which the decree was rendered (1) has adopted the Act, (2) has statutory jurisdictional requirements substantially like those of the Act, or (3) would have had jurisdiction under the facts of the case if the Act had been the law in the state. (9 U. Laws Ann. 120, Comrs.' Note foll. § 13 of the Act.) Civil Code section 5152 sets forth four alternative bases to make or modify a child custody determination: (1) the state making or modifying the decree is the home state of the child; (2) the child and at least one parent have a significant connection with that state, and substantial evidence is available; (3) jurisdiction must be exercised to protect the child in an emergency situation; and (4) no other state has, or will assume, jurisdiction.[2]

---

[2]Civil Code section 5152 provides: "(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met: [¶] (a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state. [¶] (b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. [¶] (c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent. [¶] (d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

"(2) Except under paragraphs (c) and (d) of subdivision (1), physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

"(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

As used in subdivision (1)(a) of section 5152, "home state" means "the state in which

In the present case, the modification order awarding custody to the mother was rendered by an Illinois court. That state has not adopted the Act. (See 9 U. Laws Ann. (1974-1977 supp. pamp. p. 33.) However, the record herein shows that in May 1976, when the mother commenced the proceeding in Illinois for modification of the custody provision of the divorce decree, the children had lived in Illinois with either their mother or their father for at least six months. Illinois therefore was the "home state" of the children (Civ. Code, § 5151, subd. (5)), and on that basis the Illinois court, under the standards of the Act, had jurisdiction to make the modification order awarding custody to the mother (Civ. Code, § 5152, subd. (1)(a)). Under Civil Code section 5162 the California court thus was compelled to recognize and enforce that order. It did so by awarding custody to the mother, and denying temporary custody to appellant.

Appellant contends that returning the children to their mother would expose them to mistreatment, and therefore the California court, under Civil Code section 5152, subdivision (1)(c)(ii), had jurisdiction to modify the Illinois decree by awarding to appellant temporary custody of the children. Civil Code section 5163 provides in pertinent part: "(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction. . . ." ▊ The purpose of this statute is to achieve greater stability of custody decrees and avoid forum shopping. To that end, all petitions for modification are to be addressed to the state which rendered the original decree if that state has jurisdiction under the standards of the Act.[3] (9 U. Laws Ann. 122,

---

the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months . . . ." (Civ. Code, § 5151, subd. (5).)

[3]The trial court recognized this principle, as shown by the following exchange between the court and counsel for appellant.

"THE COURT: You have the burden of proof, you are requesting for, I gather, some temporary order permitting the children to stay here until the Illinois court—until you have a chance to raise the issue, again, in Illinois?

"MRS. BOSTON [attorney for appellant]: That's right—

"THE COURT: . . . It's up to you to advise this Court how much time you want to be allowed to raise the matter in Illinois, and get a Change of Custody order out of the Illinois Court. Unless you advise the Court how much you want, there's no way I can consider your request for temporary custody.

"MRS. BOSTON: I would assume that it will be approximately three months and that

Comrs.' Note foll. § 14 of the Act.) At the time of the hearing in · California, the Illinois court retained jurisdiction to modify its order of July 29, 1976, because Illinois continued to be the "home state" of the children inasmuch as they were absent from that state only because appellant and his wife detained them in California, and the mother continued to live in Illinois. (See Civ. Code, § 5152, subd. (1)(a)(ii), § 5151, subd. (5).) There was no showing that the Illinois court would decline to modify its order on the ground that continued custody in the mother would endanger the health or safety of the children.

 ██ A California court would have jurisdiction to modify a foreign custody order under section 5152, subdivision (1)(c)(ii), on a proper showing based on physical presence of the children in the state. However, the showing which must be made is that: "it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent." The evidence in this case on the existence of an "emergency" was patently thin to nonexistent.[4] The trial court said that it thought that the question of permanent custody should be decided in Illinois, and that it would limit itself to considering whether an "emergency" existed so as to justify a temporary custody order in the grandparents while they litigated custody in the Illinois courts, and would consider such temporary custody only if the grandparents submitted themselves and the children to the jurisdiction of the California courts. We see no abuse of discretion.

we would like a temporary order that the children remain with their grandparents pending a hearing—either a full hearing in this court or a hearing in Illinois. It's immaterial to us which court it's heard in and—

"THE COURT: It must be heard in the Illinois court. . . .

"MRS. BOSTON: May I inquire of the Court, is it your opinion at this time that there can be no hearing on the custody issue in California even though the children are here and the father is domiciled in California?

"THE COURT: I haven't formed an opinion as to whether there legally can be. I have formed the opinion that there legally should not be and whether the Court has the jurisdiction to make a permanent order or not and should not take such jurisdiction. It should refer the matter back to the Illinois Court for permanent order and that this Court properly should only be concerned with any temporary order pending any action by the Illinois Court. . . . I think the Court might have jurisdiction. I think it's questionable under the statute about whether they have·it or not. I don't know if they should use it. I think the Court should defer to the Illinois Court on any permanent order."

[4]Appellant's evidence consisted of his testimony regarding the mother's treatment of the children three years earlier, and the testimony of a psychologist who, based on his interviews of the children in September and November 1976, expressed the opinion that they would be "better off" with their grandparents.

Appellant argues that the order of the trial court herein is improper, and should not be enforced, because it is punitive in that its only purpose was to punish appellant for failing to produce the children at the hearing. The purpose of the order herein was not to "punish" appellant for his failure to produce the children. Appellant presented no substantial evidence of an emergency situation within the meaning of Civil Code section 5152, subdivision (1)(c)(ii). Under these circumstances, the court had no choice but to make the order it did.

■ Appellant's final contention is that the court committed reversible error in failing to appoint "independent" counsel for the children. In support of this contention, appellant cites *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428] and *Kent v. United States* (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045], which hold that a minor in a delinquency proceeding has a constitutional right to counsel. Such holding obviously does not apply in a civil custody proceeding. Appellant has not cited, nor have we discovered, any authority requiring the appointment of independent counsel for a child who is the subject of a custody proceeding under the Family Law Act (Civ. Code, § 4000 et seq.).[5]

Another point should be made which goes beyond the technical confines of the statutes. From the evidence, the trial court could consider that the whole sorry history of this case stems from a failure of the father and his parents to present their case to the Illinois court having jurisdiction and accept the results. The trial court was not required to countenance the type of transcontinental custody gamesmanship apparently engaged in here. Nor was the trial court required to permit the grandparents to play games with it by leaving grandfather behind to fight the rear guard action in the courts while grandmother hides out with the children.[6] When faced with such "heads I win, tails you lose" conduct, the trial court need not put on a blindfold and ignore it. We think the trial court, with great restraint, firmly and fairly dealt with what it could

---

[5]Appellant cites Civil Code section 4606, which authorizes a court to appoint counsel to represent the interests of a minor child in any proceeding under the Family Law Act in which custody of the child is in issue. As appellant recognizes, this statute did not become effective until January 1, 1977, which was after the proceedings herein were concluded. Assuming that the court could, nevertheless, have appointed counsel or a guardian ad litem for the children, no one suggested that the court do so and it is difficult, in any event, to see what counsel could do for clients being secreted.

[6]At oral argument on this appeal, some 16 months after the trial court's decision, counsel informs us that the children still have not been returned to their mother.

well believe was an attempt to circumvent the orders of the Illinois court. We approve the order of the trial court.

■ It is apparent that there is no merit in this appeal. Each of the points raised by appellant is frivolous. We are unable to perceive any reason for the taking of the appeal except to vex and delay respondent. This is therefore a proper case for the imposition of a penalty on appellant. (See *Estate of Wall* (1920) 183 Cal. 431, 434 [191 P. 687]; *Miller* v. *Oliver* (1917) 174 Cal. 404, 406 [163 P. 357].)

The order of the trial court is affirmed. Pursuant to the provisions of California Rules of Court, rule 26(a), and Code of Civil Procedure section 907, the sum of $1,500 is assessed against appellant and added to the respondent Gudrun G. Schwander's costs as a penalty for the taking of a frivolous appeal.

Kingsley, Acting P. J., and Jefferson (Bernard), J., concurred.

A petition for a rehearing was denied May 8, 1978, and appellant's petition for a hearing by the Supreme Court was denied June 15, 1978.