WINDOW ROCK DISTRICT COURT

April 20, 1983

No. WR-CV-121-83

IN THE MATTER OF THE CUSTODY OF:

B.N.P., B.P., L.P. JR., Minor Children.

Honorable Tom Tso, Judge presiding.


This is a child custody dispute in which this court is called upon to make a decision on which of the two Indian governments should exercise the power and duty to protect children under their care. The foremost consideration for this court must be the best interests of the children who come before it, and after that considerations of governmental relations come into play.

since this is a conflicts of law case utilizing the tools of finding connections with governments and examining governmental interests for the purpose of comity, the facts of the case are all-important.

FACTS FOUND

The petitioners are the natural father of the three children who are before the court and the natural father's wife. The three children, boys, 7, 9, and 11 years of age are Navajo on their father's side and Mescalero Apache on their mother's side.

The parents separated in 1979, and in 1980 they obtained their decree of divorce from the Mescalero Apache Court, with custody being voluntarily given to the father. From the time of the divorce until September 1982 the children have physically been within the territorial confines of the Navajo Nation, and although the children have been placed in school in Gallup, their connections with the Navajo Nation are strong. In sum, the children have been with the natural father and his family members from 1979 until the present time.

The one break in residence in a Navajo environment was for the period of time from December 16, 1982 to the middle of March, 1983. It appears the children were taken from the father on the pretext of visitation, and the physical custody of the children on the Mescalero Apache Reservation was used as a pretext for a modification of custody order by its court. The children were apparently returned here under the same pretext.

THE CONFLICT IN CHILD CUSTODY JURISDICTION

The court is uncomfortable with the role it has in this case because of the fact both the parents of these children have seen fit to ignore the desires of their children by kidnapping them back and forth. This court recognizes the fact there is an outstanding Mescalero Apache Tribal Court decree with respect to these children and that the normal

course of action would be to automatically enforce that decree. However the law of the Navajo Nation as to given recognition to the decrees and judgments of other Indian courts is that where (1) the other court had jurisdiction, (2) the proceedings there were proper and (3) it is within the public policy of the Navajo Nation, those decrees and judgments will be honored and enforced. In the Matter of Chewiwi, 1 Navajo R. 120, 126 (1977).

While the court is invited to examine the jurisdiction of the other court (as we are permitted to do) and to find that the proceedings before the Mescalero Apache Tribal Court were irregular, this is a matter which, on the facts, can be decided by deciding this court's jurisdiction. This is done due to this consideration:

> "One of the things that the child's welfare certainly demands is stability and regularity. If he is continually being transferred from one parent to the other by conflicting court decrees, he may be a great deal worse off than if left with one parent, even though as an original proposition some better provision could have been made for him." Clark, Law of Domestic Relations, p. 326 (1968).

This court is required by Navajo law to give children its protection for their care, guidance, control and welfare. 9 NTC Sec. 1001. To that end, this court has jurisdiction in child custody matters. 9 NTC Sec. 1053(3). It also has general domestic relations jurisdiction over all Indians. 9 NTC Sec. 253. This is an important duty for the court to exercise because

> "If tribal sovereignty is to have any meaning at all at this juncture of history, it must necessarily include the right, within its own boundaries and membership, to provide for the care and upbringing of its young, a since qua non to preservation of its identity." Wisconsin Potowatomies v. Houston, 393 F. Supp. 719, 730 D. Mich. (1973).

This court considers the construction of its juvenile statutes for the purpose of this particular problem to be one of statutory construction and procedural law, and therefore it will utilize the persuasive precedents of the Restatement on the Conflict of Laws and the Uniform Child Custody Jurisdiction Act as guides for the permissible limits of the jurisdiction conferred.

Sec. 79 of the Restatement Second, Conflict of Laws (1979) provides:

> "A state has power to exercise judicial jurisdiction to determine the custody. . . of the person of the child. . .
>
> (a) Who is domiciled in the state, or
> (b) Who is present in the state, or
> (c) Who is neither domiciled nor present in the state, if the controversy is between two or more persons who are personally subject to the jurisdiction of the

-156-

state."

Section Three of the Uniform Child Custody Jurisdiction Act has several grounds for jurisdiction to make or modify a child custody decree, including where:

>(1) "This state (i) is the home state of the child at the time of the commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

>(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

>(3) The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or it is otherwise neglected (or dependent)."
>(Other portions of the section omitted).

As to the domicile test of the Restatement, it is deemed satisfied by the rule that the child's domiciled is that of his father. Clark, supra, p. 151. For the reason that this court will exercise jurisdiction on many grounds, including section 3(1)(ii) of the Uniform Child Custody Jurisdiction Act, domicile with the father under the original Mescalero Apache Court order will be deemed to have been continuing.

These children are certainly present within Navajo Indian Country, so the Restatement is satisfied as to that ground as well.

Additionally, there is a sort of domicile-present in Indian country test which is satisfied by the kinship of the paternal family, the Navajo ties the children have and their Navajo orientation. These are sufficient to give the Navajo Nation an interest in them which will support jurisdiction. Wisconsin Potowatomies v. Houston, 393 F.Supp. 719, 733-734 (Mich. 1973).

Under the Uniform Child Custody Jurisdiction Act there are a number of considerations which support the exercise of jurisdiction here:

1. This jurisdiction is the home jurisdiction of the children. Since the children have always lived within Navajo Indian Country and the significant ties the children have are to the Navajo people and not the Mescalero Apache People (i.e. in terms of orientation), this is the "home state" for the children in the legal sense. See Howard v. Gish, 373 A.2d 1280 (Md., 1977); In re Marriage of Schwander, 79 Cal.App.3d

1013 (Cal. 1978); In re Lemond, 395 NE2d 1287 (Ind. 1979); Both v. Superior Court, 590 P.2d 920 (Ariz. 1979).

2.    This was definitely the "home state" of the children within 6 months of the commencement of this action, and these children were definitely absent because of their removal by a person claiming custody. This is the one ground upon which this court could rely. This section is the parental kidnapping section of the code, and it is applied here particularly because of the mother's conduct in taking the children for the purpose of forum shopping.

3.    It is in the best interests of the children that this court assume jurisdiction because due to schooling, family ties, a period of residence, acculturation, orientation and many other factors these children have a significant connection with the Navajo Nation. Further, this court has received evidence of the future care of the children and their case.

4.    The children are physically present within Navajo Indain Country and sadly this court finds there is sufficient evidence that they need protection due to the familial situation they are in. We have two parents battling over the children, and until the situation can be stabilized, they will be in need of protection. The court has interviewed the children as to their custody preferences and has recieved the reports of professionals indicating that the children prefer to be with their father and that they fear their mother due to drinking.

At the beginning of this opinion the court indicated that it would use the Navajo public policy portion of the three part test in Chewiwi. The protection of children is within the public policy of the Navajo Nation, and the use of two reliable national legal standards for the exercise of jurisdiction has lead this court to the conclusion it should take jurisdiction in this matter.

THEREFORE IT IS HEREBY ORDERED AS FOLLOWS:

1.    This court has jurisdiction over the persons of the petitioners and children of the action. and over the subject matter of the action;

2.    The permanent custody of B.N.P., B.P., and L.P., Jr. shall be in L.P., Sr.;

3.    Counsel shall submit draft findings of fact and conclusions of law with respect to the evidence adduced at the hearing of this matter within ten (10) days which fully address the personal and subject matter jurisdiction of the court and the factors affecting the best interests of the children. Counsel are advised that the propriety vel non of the proceedings before the Mescalero Apache Tribal Court are not a matter for such findings, and the proceedings before the prior court will be deemed to have been regular for the purposes of this order;

4.    Counsel for the petitioner shall cause service of certified copies of this order upon the Navajo police, the childrens' schools and upon their natural mother;   and

5.    Vernetta Platero, the natural mother of the children, shall have the right of reasonable visitation of the children and she shall be consulted as to the education and well being of the children. The petitioner father is advised that he should not attempt in any way to shut the mother off from interaction or contact with the children.

SO ORDERED.