[No. F004696. Fifth Dist. Oct. 10, 1985.]

KATHY DAVES, Plaintiff and Respondent, v.
BENJAMIN F. DAVES, JR., Defendant and Appellant;
DONALD N. STAHL, as District Attorney, etc.,
Claimant and Respondent.

**COUNSEL**

Judith Yecies for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

John K. Van de Kamp, Attorney General, Joel Carey and Cynthia G. Besemer, Deputy Attorneys General, for Claimant and Respondent.

## OPINION

**RITCHEY, J.**\*—In the finest tradition of domestic relations cases, this long-distance child custody dispute tests, once again, the jurisdictional integrity of uniform state laws enacted to promote comity in accord with the full faith and credit clause of the United States Constitution.

Our analysis requires some considerable elaboration on the factual background as well as on legal proceedings conducted in two states.

Appellant Benjamin Daves, Jr. (hereafter Benjamin), and respondent, Kathy Daves (hereafter Kathy) were married on August 17, 1971, and the marriage was dissolved by decree of the District Court of Oklahoma County, Oklahoma on April 4, 1980. Initially, Benjamin was awarded custody of their two minor daughters, then ages seven and two. Thereafter, on May 6, 1980, Benjamin stipulated to a modification of the divorce decree before the Oklahoma court, awarding custody of the children to Kathy with unspecified visitation rights to Benjamin.

In June 1980, Kathy moved with the children to California, residing in Tuolumne County. Meanwhile, on June 5, 1981, the parties agreed to a modification of the custody decree, the Oklahoma court ordering visitation rights to Benjamin for the months of June, July and August of each year.

The children remained in California with Kathy from June 1980 until June 1981, at which time they were returned to Benjamin in Oklahoma where they remained, by agreement of the parties, until December 1981, whereupon the children were returned to California.

In May 1982, Kathy filed a complaint in the Tuolumne County Superior Court seeking to establish the Oklahoma judgment as a California judgment. She also sought to have the visitation period as set forth by the Oklahoma County District Court modified to better conform to the children's school schedule. Additionally, she prayed for a determination that Benjamin be responsible for paying the cost of transporting the children to and from Oklahoma. Communications and negotiations took place between Kathy's attorney and Benjamin's attorney.

The parties and their attorneys agreed to the following "Stipulation and Order":

"IT IS HEREBY STIPULATED by and between the parties hereto that:

---

\*Assigned by the Chairperson of the Judicial Council.

"1. The judgment of divorce between the parties hereto entered by the District Court of Oklahoma County, State of Oklahoma, be established as a California judgment in the Tuolumne County Superior Court, State of California;

"2. Said judgment is hereby modified to change visitation of the minor children to July 1 through August 31 of each year; and

"3. Defendant shall be responsible for the transportation of the minor children to and from his place of residence during visitation periods."

Benjamin and his attorney signed the stipulation on June 24, 1982. Thereafter, it was signed by Kathy and her attorney, and an order conforming thereto was signed by the Tuolumne County judge and filed with the Tuolumne County Superior Court on July 2, 1982.[1] Pursuant to this order, Kathy sent the children to Oklahoma on July 1, 1982.

In August 1982, Benjamin apparently became dissatisfied with the terms of this stipulation and order. Initially, he declined a frontal assault on the California judgment, instead electing to file a "motion to modify" in the Oklahoma County District Court. No mention was made in his pleadings as to the stipulation or the California order. He claimed "change in circumstances and conditions" and among other things, "[t]he . . . mother, is unable to support and provide adequately for said children."

On August 17, 1982, the Oklahoma court made an ex parte temporary order granting custody to Benjamin, pending a hearing on the motion to be held in October. Meanwhile, Kathy retained counsel in Oklahoma who contested the subject matter jurisdiction of the Oklahoma court. A hearing was held, and on October 23, 1982, the Oklahoma County District Court found that Benjamin had submitted himself to the jurisdiction of the California court and dismissed Benjamin's Oklahoma action.

The order was stayed pending appeal, and on November 22, 1983, the Oklahoma Court of Appeals affirmed the dismissal. Interpreting the Uniform Child Custody Jurisdiction Act (Uniform Act), the Oklahoma appellate court found California had substantially complied with the Uniform Act for the following reasons: (1) the period of time Kathy and the children had lived in California; (2) evidence that Benjamin had improperly retained custody of the children after the visitation period had expired;[2] (3) evidence

---

[1] Copies of the pertinent Oklahoma decrees were appended to the Tuolumne County order.

[2] The Oklahoma appellate court cited and quoted 10 Oklahoma Statutes, section 1610(B), equivalent to Civil Code section 5157, subdivision (2). This is one of the grounds offered, under the Uniform Act, for a state to decline jurisdiction due to conduct of a moving party.

that the parties' divorce decree had been established as a California judgment; (4) evidence that a modification to that decree regarding custody had been entered in California; and (5) evidence that Benjamin had entered appearances in the California court and had never objected to jurisdiction there. Accordingly, the appellate court held that the Oklahoma County District Court did not err in declining jurisdiction in favor of properly exercised prior California jurisdiction.

The appellate court remanded the case for an evidentiary hearing on the question of child abuse, which if found, might warrant a finding of facts justifying temporary emergency jurisdiction by the Oklahoma courts. The reviewing Oklahoma court made it clear, however, that even an emergency justifying exercise of temporary jurisdiction by the Oklahoma courts would still not justify a shift of subject matter jurisdiction to the courts of Oklahoma. A petition for rehearing was denied. The appellate court's opinion was ultimately affirmed by the Oklahoma State Supreme Court on January 27, 1984.

Prior to the above decision of the Oklahoma State Supreme Court, a criminal complaint was filed, in December 1983, in Stanislaus County Municipal Court in which Benjamin was the named defendant. The complaint alleged violation of Penal Code section 278.5 (violation of visitation decree). Specifically, it alleged Benjamin "willfully, unlawfully and feloniously retain[ed] and conceal[ed] the children" in Oklahoma after the visitation period ordered by the Tuolumne County Superior Court had expired.

At some point extradition proceedings against Benjamin were initiated by Stanislaus County. The Governor of Oklahoma refused to allow extradition. The county intended to next attempt extradition through a writ of habeas corpus.

In February of 1984, Kathy filed an application for enforcement of foreign decree and a writ of habeas corpus in the Oklahoma County District Court. Kathy sought enforcement of the stipulation entered in Tuolumne County Superior Court, or in the alternative, transfer of the case to California. This same month, Stanislaus County filed a motion to intervene in that Oklahoma proceeding. It was alleged in the motion to intervene that Kathy was residing in Stanislaus County.

Having exhausted his appellate remedies in Oklahoma and facing multifaceted actions, on April 5, 1984, Benjamin finally contested the July 2, 1982, Tuolumne County stipulation and order. Making a special appearance before the Tuolumne County court, he filed a motion to set aside and vacate

the almost two-year-old stipulation. After a hearing in May 1984, the motion was denied.

The Stanislaus County District Attorney filed a motion in this action as well. He sought attorney fees and costs from Benjamin related to attempted enforcement of the Tuolumne County child custody order. Also in May, a later hearing was held on Benjamin's motion to reconsider his motion to set aside and vacate the stipulation, as well as his motion to quash service for lack of in personam jurisdiction. In July of 1984, these too were denied. Attorney fees and costs were also awarded to Stanislaus County. Benjamin timely appeals.

Apparently in March of 1985, the Supreme Court of Oklahoma considered Kathy's writ of habeas corpus. The Oklahoma high court granted the writ, awarding Kathy custody of the two children. Custody was conditional, however; it was subject to temporary custody being granted to Benjamin. Benjamin's custody was also conditional: He had to file in the Stanislaus County Superior Court within 30 days his written notice of intent to seek modification of custody, and within 60 days thereafter, file his motion to change custody. His temporary custody was to last only until the California courts rendered a judgment on the merits of his motion, or until he failed to file within the above-mentioned times.

The record does not disclose further proceedings. It does appear that the children have been in Oklahoma from July 1, 1982, until at least March 1985.

I. DENIAL OF BENJAMIN'S MOTION TO SET ASIDE AND VACATE THE JUDGMENT OF JULY 2, 1982

The Uniform Act was adopted by California in 1973 and by Oklahoma in 1980.[3] It was enacted for the stated purpose of avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, discouraging continuing conflict over custody, deterring abductions and unilateral removals of children, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of sister states. (§ 5150.)

---

[3]California Civil Code sections 5150-5174; 10 Oklahoma Statutes sections 1601-1628. Unless otherwise noted, statutory references are to the Civil Code.

Section 5152 of the Uniform Act sets forth the grounds for the exercise of subject matter jurisdiction as to child custody.[4] It is apparent that, in a given dispute, more than one state may qualify for initial subject-matter jurisdiction under section 5152. The crux issue in the instant case is not whether the California court has such initial jurisdiction. Rather, the central issue is whether or not the Uniform Act *allows or requires* the California court to take jurisdiction *under circumstances where the Oklahoma court had previously assumed jurisdiction.* The latter issue is controlled by sections 5155, 5157, and most pertinently, section 5163. Section 5163 provides, in part: "(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction."

Benjamin's argument that the court erred in denying his motion to set aside and vacate the stipulation and order of July 2, 1982, relies heavily on this section as well as *Kumar* v. *Superior Court* (1982) 32 Cal.3d 689 [186 Cal.Rptr. 772, 652 P.2d 1003].

---

[4]Section 5152 provides:

"§ 5152. Jurisdiction; grounds

"(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

"(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

"(c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.

"(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

"(2) Except under paragraphs (c) and (d) of subdivision (1), physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

"(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

Like the present case, *Kumar* is procedurally complex. It appears factually very similar to the present case, although upon close reading, several significant factual differences become apparent. Husband and wife were divorced in New York, with wife receiving custody of their only child. Husband was granted visitation. Wife, without notice to husband, moved to California. Husband registered the New York custody decree in California and proceeded by way of writ of habeas corpus to direct wife to produce the child. Husband also began modification proceedings in New York. In California, wife sought an order to show cause to modify the New York visitation order. Husband moved to dismiss the custody and visitation proceeding in California for lack of subject matter jurisdiction. He further moved to quash service in the portion of the California proceeding dealing with support arrearages. He did so on the basis of lack of in personam jurisdiction. The California court exercised jurisdiction and denied husband's dismissal motion.

Meanwhile, two days after the order of the California court, the New York trial court issued an order to show cause, determined it had jurisdiction, and rendered a decision followed by a formal order.

The California Supreme Court found the lower court erred in exercising jurisdiction: Husband had insufficient minimum contacts to establish personal jurisdiction, use of his habeas corpus proceeding for purposes of establishing personal jurisdiction was unfair; and because New York had continuing jurisdiction, California should have deferred subject matter jurisdiction to that state. This last reason is the heart of Benjamin's argument.

Our Supreme Court was quick to point out in *Kumar* that courts should first determine which type of jurisdiction they are asked to exercise, initial or modification. (*Kumar, supra,* 32 Cal.3d at p. 699.) Initial jurisdiction is determined by section 5152, and modification jurisdiction is determined by section 5163. New York had obtained original or initial jurisdiction for the initial decree because it was the child's home state. (*Id.,* at p. 697; see § 5152, subd. (1)(a).) New York retained jurisdiction to modify its decree, even after the unauthorized removal of the child by the mother. This continuing authority to exercise jurisdiction was based upon section 5152, subdivision (1)(b). New York, therefore, fell within the provisions of section 5163, subdivision (1)(a), and the California courts should have deferred jurisdiction. (*Kumar, supra,* 32 Cal.3d at pp. 697-698.) New York retained that jurisdiction so long as husband continued to reside in New York and assert and exercise his custody and visitation rights.

Like the facts in *Kumar,* Benjamin continued to live in Oklahoma after the children had been removed from the state. Also like *Kumar,* Oklahoma

had not yet declined exercising modification jurisdiction, and it was the home state of the children when the initial decree was entered.

Unlike *Kumar,* the children arrived and remained residents of California without contest. California became their home state. No issue of unclean hands was present. Indeed, the children resided in California a number of years prior to any action being taken in California on the part of Benjamin or Kathy. Even more significantly, Benjamin entered into a stipulation in which he asked that the Oklahoma judgment of divorce be entered as a California judgment and that the judgment be modified as to its child visitation provisions. Furthermore, the courts of Oklahoma have consistently held, subsequent to entry of the stipulation and order in California, that Oklahoma declined jurisdiction.

Having contrasted the instant case with *Kumar,* we now focus on section 5163, decisive to a resolution of this dispute. As indicated previously, California clearly had initial subject matter jurisdiction under grounds set forth in both sections 5152, subdivision (1)(a), and 5152, subdivision (1)(b). Therefore, one element to modification jurisdiction was easily satisfied; that element is set forth below in section 5163, subdivision (1)(b). This leaves the other essential prerequisite to modification jurisdiction, section 5163, subdivision (1)(a): "It appears to the court of this state that [Oklahoma] does not now have jurisdiction [under section 5152] or has declined to assume jurisdiction to modify the decree . . . ." ■ *Kumar* offers the following guidance: "[I]n accord with the letter of section 5163 and its purpose 'to achieve greater stability of custody arrangements and avoid forum shopping' (9 U.Laws Ann. (1979 ed.) p. 154, Comrs. Note), *all* petitions for modification must be addressed to the state which rendered the original decree if that state had and retains jurisdiction under the standards of the act. (*Id.; Palm* v. *Superior Court* (1979) 97 Cal.App.3d 456, 468 [158 Cal.Rptr. 786]; *In re Marriage of Schwander* (1978) 79 Cal.App.3d 1013, 1019 [145 Cal.Rptr. 325.)" (*Kumar, supra,* 32 Cal.3d at p. 698, italics in original.) ■ *Kumar* also included a quotation from the commissioner's notes to the Uniform Act: "Professor Bodenheimer described a situation remarkably similar to that before us: 'A typical example is the case of the couple who are divorced in state A, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to state B, with or without permission of the court to remove the children. State A has continuing jurisdiction and the courts in state B may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state B has in the meantime become the "home state" under section 3. The jurisdiction of state A continues and is exclusive as long as the husband lives in state A unless he loses contact with the children,

for example, by not using his visitation privileges for three years.' (Bodenheimer, *Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws* (1969) 22 Vand.L.Rev. 1207, 1237.)" (*Kumar, supra,* 32 Cal.3d at p. 696.)

It is clear by the very language of section 5163, subdivision (1)(a), as well as the *Kumar* opinion at page 698, that California modification jurisdiction existed if the court below reasonably believed that contact with Oklahoma had become slight such that Oklahoma *now* lacked the prerequisites for subject matter jurisdiction under section 5152.[5] In Professor Bodenheimer's example above, parent "A," losing contact with the children or moving out of the state, are but two ways contact with the state could become slight.

In the context of the facts of the instant case, the effect of the stipulation and order now looms paramount. Although Benjamin had not moved from Oklahoma, he did stipulate to jurisdiction in California. There is no issue in the appeal, nor could there be, that Benjamin conferred in personam jurisdiction on the California court. All other immediate family members had left Oklahoma and were before the court in California. Benjamin's presence in Oklahoma was the state's last significant contact with the case, or the persons involved. By way of stipulation, Benjamin inferred that Oklahoma's interest in and contact with the case were slight.

Furthermore, at least one court has held that the fact of such a stipulation is relevant in the evaluation of a state's contacts with a case under the Uniform Act. (*Smith* v. *Superior Court* (1977) 68 Cal.App.3d 457, 464 [137 Cal.Rptr. 348].) ██ ██ And while it is conceded subject matter jurisdiction can never be conferred simply by way of consent of the parties (*In re Marriage Ben-Yehoshua* (1979) 91 Cal.App.3d 259, 263 [154 Cal.Rptr. 80]), Benjamin's submission to the California court, on the facts of this case, could well leave Oklahoma, as well as California, wondering what significant contacts were left. More significantly, Oklahoma in fact concluded that California had substantially complied with the Uniform Act, declined jurisdiction and deferred jurisdiction to California.

We finally note that Benjamin does not appeal from the Tuolumne County Superior Court's judgment (stipulation and order) of July 2, 1982. To be precise, he appeals from the Tuolumne County court's order of July 27, 1984, in which his motion to set aside and vacate that stipulation and order was denied. California has modification jurisdiction if "it appears to the court of this state that [Oklahoma] has declined to assume jurisdiction to

---

[5]See section 5152, subdivision (1)(b), at footnote 4, *ante.*

modify the decree . . . ." (§ 5163, subd. (1)(a).) While it is apparent that the subject matter jurisdiction must relate back to the time when the California court originally assumed jurisdiction, July 2, 1982, it may be noted that Oklahoma declined to assume modification jurisdiction after July 2, 1982. That is, due to the delay in challenging California's jurisdiction and by applying first to the Oklahoma courts, the court below considered and decided Benjamin's challenge to California's jurisdiction at a time when the Oklahoma courts had declined jurisdiction. In this factual context, the trial court's judgment was in accord with the obvious purpose of section 5163, subdivision (1)(a); that is, it facilitated jurisdiction in a state (California) that otherwise has subject matter jurisdiction, where the court of the state that rendered the original decree (Oklahoma) now declines to assume jurisdiction.

Accordingly, the Tuolumne County court properly denied Benjamin's motion to set aside and vacate the judgment of July 2, 1982.

## II. CLAIMANT'S MOTION FOR ATTORNEY FEES AND COSTS

In its judgment on July 27, 1984, the Tuolumne County Superior Court awarded to claimant, District Attorney for Stanislaus County, attorney fees and costs. Such fees and costs were incurred pursuant to the Stanislaus County District Attorney's statutory obligation to enforce a California child custody decree.[6] It further appears that Kathy had moved to Stanislaus County after the stipulation and order were filed in Tuolumne County Superior Court on July 2, 1982, and applied to Stanislaus County for enforcement of the order on October 4, 1982.

Stanislaus County was awarded $4,962.50, consisting of $1,237.50 for attorney fees and $3,725 for costs. The evidentiary bases for this award were investigative costs, costs to intervene in Oklahoma court proceedings, clerical costs, court reporting and document costs, as well as postage and telephone expenses. Such expenses commenced on October 5, 1982, with

---

[6]Section 4604, subdivision (b), provides as follows: "(b) In any case where a custody or visitation decree has been entered by a court of competent jurisdiction and the child is taken or detained by another person in violation of the decree, the district attorney shall take all actions necessary to locate and return the child and the person who violated the decree and the child and to assist in the enforcement of the custody or visitation decree or other order of the court by use of any appropriate civil or criminal proceeding."

Section 4605, subdivision (b), provides as follows: "The court in which the custody proceeding is pending or which has continuing jurisdiction, shall, if appropriate, allocate liability for the reimbursement of actual expenses incurred by the district attorney to either or both parties to the proceedings and such allocation shall constitute a judgment for the state for the funds advanced pursuant to this section. The county shall take reasonable action to enforce such liability and shall transmit all recovered funds to the state."

Kathy's application for enforcement of the child custody order, and were concluded on May 1, 1984.

At the outset, we note the accuracy and nature of the expenses claimed are not in dispute. Neither did Benjamin claim that these expenses were not incurred pursuant to applicable California law.

Benjamin's principal challenge to this order was a lack of subject matter jurisdiction in the Tuolumne County court, under the Uniform Act. That challenge has been rejected.

■ His next claim is that, while he was in violation of the terms of the California child custody order from September 1, 1982, onward, his violations are excused because his acts and omissions were under color of, and in good faith reliance on, an Oklahoma court order.

Our analysis of this claim begins by recalling that Benjamin submitted to California jurisdiction on July 2, 1982, at which time he also stipulated to a modified child custody order. Pursuant to that order, the children were returned to Oklahoma on July 1, 1982, to be returned to California on September 1, 1982. Benjamin asserts that his application for an intervening Oklahoma court order, granted ex parte on August 27, 1982, should excuse his failure to return the children to California on September 1, 1982. Even though Oklahoma reversed its own order and declined further jurisdiction on October 23, 1982, his argument runs, further violations of the California court order are excused because he was exhausting his Oklahoma appellate remedies. These were exhausted in the Oklahoma Supreme Court on January 27, 1984.

We note, however, Benjamin's claim is founded upon an ex parte, *temporary* custody order which was intended by Oklahoma to have a duration of only a few weeks.[7] Moreover it was reversed by Oklahoma two months later. Claimant's expenses and fees were incurred over the *subsequent* 19-month period. Such a tenuous order establishes neither color of law nor good faith so as to escape the claimant's monetary demands. This is not to say that no conflicting Oklahoma order would do so. To the contrary, comity, full faith and credit concepts, and uniform state laws, must be considered in the district attorney's application of section 4604 to any interstate child custody dispute. We hold only that such principles are unavailing in this case because what little Oklahoma did will not support Benjamin's claim of colorable right or good faith reliance.

---

[7]Oklahoma procedure called for a noticed hearing and replacement of the temporary order. Such a hearing was calendared. However, the hearing was never held and the Oklahoma County District Court declined jurisdiction.

Benjamin's claim of good faith suffers in other respects. When the Oklahoma appellate process ended in its Supreme Court in January 1984, the children were still not returned to California; the California order continued to be ignored. Furthermore, Benjamin's tardiness in contesting the jurisdiction of the California court has substantially delayed the resolution of this dispute.

Benjamin's other arguments against the court's award of costs and fees are without merit. ■ The fact that no penal charges were brought in Tuolumne County, and that the costs and fees were incurred in a county other than Tuolumne, is irrelevant. Section 4605, subdivision (b), instructs that the county where the custody proceeding is pending shall allocate liability. ■ Likewise, his argument that the Stanislaus County District Attorney at all times knew the whereabouts of the children is without merit. Even if the Stanislaus County District Attorney's office did know the whereabouts of the children at all times, a fact not proven, plainly costs and fees may still be awarded if there was reason to believe that Benjamin would not appear, or if Benjamin was detaining the children in violation of a valid California decree.

Section 4605 vests the court below with the following discretion: "The Court . . . shall, if appropriate, allocate liability for the reimbursement of actual expenses . . . ." On the record before us appellant Benjamin has not demonstrated an abuse of discretion. There is no error.

The judgment is affirmed.

Franson, Acting P. J., and Hamlin, J., concurred.