[No. A121719. First Dist., Div. Two. Aug. 7, 2009.]

In re the Marriage of GHULAM and FIZZA RIZVI NURIE.
GHULAM NURIE, Respondent, v.
FIZZA RIZVI, Appellant.

GHULAM NURIE, Plaintiff and Respondent, v.
FIZZA RIZVI, Defendant and Appellant.

**COUNSEL**

Law Offices of Ann F. Van De Pol, Ann F. Van De Pol; Law Offices of Robert A. Goodman and Jean Greenbaum for Defendant and Appellant.

Law Offices of Seymour M. Rose and Theodore M. Amado for Plaintiff and Respondent.

**OPINION**

**RICHMAN, J.—**

## INTRODUCTION

This case graphically confirms what we said long ago: " '[c]ontroversies over custody are oftentimes long drawn out and bitter . . . .' [Citation.]" (*In re Marriage of Joseph* (1990) 217 Cal.App.3d 1277, 1283 [266 Cal.Rptr. 548].) This one involves an acrimonious six-year international custody battle, in which lawyers on two continents seemingly have left no stone unturned, while the parties themselves have left no rock unhurled. The accusations and counteraccusations include kidnapping, fraud, and domestic violence, all set against a backdrop of INTERPOL[1] warrants, armed gunmen, and flights from justice. In both California and Pakistan, mud has been slung, court orders flouted, and reputations challenged.

■ The issue on appeal, however, is the far less dramatic one of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement

---

[1] INTERPOL's full name is the International Criminal Police Organization.

Act (UCCJEA). (Fam. Code, § 3400 et seq.)[2] We conclude the well-reasoned decision of the trial court was correct: the California court that dissolved the marriage had initial home state jurisdiction, it never lost jurisdiction, and its order granting custody to the husband was valid when entered and remains valid.[3] The wife, of course, remains free to request modification.

## FACTUAL AND PROCEDURAL BACKGROUND

Fizza Rizvi (Wife) and Ghulam Nurie (Husband) were both born in Pakistan, but Husband had lived in the United States for his entire adult life and is a naturalized United States citizen. They were married in a religious ceremony in Karachi on October 30, 2001. Shortly after the wedding, Wife came to live with Husband in his home of 16 years in Fremont, California. The couple were again married in a civil ceremony in Reno, Nevada, on January 31, 2002, and resided together in Fremont for the duration of their brief marriage. On September 16, 2002, their son (Son) was born in San Ramon, California.

On or about February 19, 2003, Wife took five-month-old Son to Pakistan, ostensibly on a four-week visit with the extended families. Husband bought round trip airfare for them on that understanding. At the end of that time, Wife said she wanted to extend her visit for a few more weeks, and Husband agreed. Husband later learned through a third party that Wife did not plan to return.

Husband traveled to Pakistan in late May 2003 to attempt to persuade Wife to return with their Son. His efforts failed, and he returned to California alone. Wife did not directly communicate to Husband that she did not intend to return to California until the "end of May" 2003.

On June 20, 2003, Husband filed for dissolution of the marriage in Alameda County Superior Court (No. FF03-102572) (Dissolution Action). He sought custody of Son under the UCCJEA. On July 29, 2003, he obtained an ex parte order to show cause granting him temporary custody. Wife was served in Pakistan on September 16, 2003.

On September 30, 2003, Margaret Gannon, an Oakland attorney, made a special appearance on Wife's behalf to contest subject matter jurisdiction under the UCCJEA and to quash service of summons. At that hearing, a briefing schedule was established and a hearing on the merits set for November 4, 2003.

---

[2] All statutory references, unless otherwise indicated, are to the Family Code.

[3] In addition to this appeal, on July 3, 2008, the wife also filed a petition for writ of mandate, prohibition and/or supersedeas or other appropriate relief (*Rizvi v. Superior Court* (Aug. 12, 2008, A121966)), which was denied on August 12, 2008.

Wife substituted in as her own attorney on October 16, 2003, before any briefs had been filed. Wife filed no briefs, did not appear at the November 4 hearing, and took no further action to challenge the court's jurisdiction. The court found that Wife had been served and had notice of the hearing. After hearing testimony from Husband about Son's birth and first months of life, as well as the circumstances under which Son was taken to Pakistan, the court found it had home state jurisdiction and awarded sole legal and physical custody to Husband. The court issued a written order on November 5, 2003 (2003 Custody Order), with a substantially identical amended order filed November 12, 2003.[4]

Meanwhile, on October 1, 2003, Wife filed an action seeking custody of Son in the Court of the Civil Judge and Guardian Judge (Guardian Court) in Pakistan (No. 637/2003). She neglected to disclose the pendency of the California Dissolution Action. On October 3, the Pakistani court issued an order forbidding Husband to remove Son from Pakistan. In the custody application, Wife alleged she had been physically abused by Husband during their marriage.

Husband filed responsive papers, informing the Guardian Court of California's 2003 Custody Order. On December 1, 2003, the Pakistani court dismissed Wife's custody application, deferring to the California court's jurisdiction.

Wife appealed that decision to the district court in Karachi (No. 74/2003), which issued an order temporarily forbidding the removal of Son from Pakistan. The parties agreed to settle the appeal by entering into an agreement on December 16, 2003, under which they were to reconcile as a couple in the United States and share custody of Son (2003 Compromise). Husband agreed not to "mal-treat" Wife or her family and, if he broke that agreement, Wife was entitled to recourse under California law. Husband also agreed to furnish the California court with a copy of the 2003 Compromise after both parties returned to California. Incorporating the terms of the parties' agreement, the Pakistani court issued an order disposing of the appeal (No. 74/2003) (December 2003 Order).

Under their agreement, Wife was to return to California with Son on or about December 31, 2003. She failed to do so, however, claiming that

---

[4] The November 5 order erroneously stated, "The court finds Petitioner filed this action on June 20, 2003, within six months of the birth of the minor child." This was factually untrue. The amended order indicated jurisdiction was based on California having been Son's home state within six months prior to the filing of the Dissolution Action. In addition, the November 12 order corrected a typographical error in the clause awarding "sole legal and sole physical custody" to Husband.

Husband had verbally abused her after the agreement was signed. Husband returned to the United States alone in late December 2003 or early January 2004.

The Alameda County District Attorney's Office then got involved. Wife corresponded by e-mail with its investigator, detailing her allegations of abuse and neglect by Husband. Nevertheless, on March 1, 2004, the district attorney's office issued an arrest warrant for Wife, alleging two felonies for child abduction and unlawful deprivation of custody (Pen. Code, §§ 278, 278.5).

On March 1, 2004, Wife, represented by new California counsel, Hannah Sims, sought an ex parte order to show cause in California, requesting that the court modify the 2003 Custody Order or, in the alternative, "abdicate" jurisdiction to Pakistan. Wife's request included a declaration by her alleging physical and psychological abuse at Husband's hands during their marriage, and detailing events in Pakistan leading up to and following the December 2003 Order. Husband responded, in part, by requesting judicial notice of a number of documents that had been filed in the Pakistani courts.

On March 5, 2004, the court denied Wife's ex parte application and set a hearing for May 5, 2004. Wife's attorney subsequently took her motion off calendar, as Wife would not risk arrest and prosecution to appear at the hearing.

Sometime in 2004,[5] Husband returned to Karachi, where Wife alleges he bought a house in October 2004. She claims he lived there almost continuously for three years thereafter, enjoying regular visitation with Son. Husband acknowledges that he visited Pakistan frequently from 2004 through October 2007 and that he did exercise some supervised visitation with Son, but he claims their time together was "unconscionably limited" by Wife. Husband claims he was only in Pakistan temporarily to fight for custody of Son and always intended to return to his home in California.

Husband did initiate substantial litigation in Pakistan over the years, most of it aimed at either enforcing, or obtaining relief from, the December 2003 Order, which the Pakistani courts treated as binding on the issue of joint custody.[6] Husband also sought orders for visitation with Son, the most recent being the July 12, 2006 order that Wife seeks to enforce in this proceeding (July 2006 Order).

[5] Wife alleges in various filings that Husband "moved" to Pakistan in spring of 2004, June 2004, October 2004, or December 2004.

[6] On December 27, 2003, Husband filed a motion for civil contempt in the district court, which was dismissed in August 2004 (No. 74/2003).

Meanwhile, on October 29, 2004, while Husband was evidently in Pakistan, his attorney had Wife's default entered in the Dissolution Action in California, with notice to Wife's attorney of record. On January 21, 2005, judgment of dissolution was granted, with legal and physical custody awarded to Husband, again with notice to Wife's counsel. On February 1, 2005, Hannah Sims formally withdrew as Wife's counsel. Wife claims, however, that she had no knowledge of the default judgment until December 18, 2007.

Though the circumstances are disputed, it is fairly clear that Husband was not in Pakistan from October 2005 until April 2006, and we may infer that he returned to California.[7] He again returned to Pakistan in April 2006 and began to seek court-ordered visitation with Son. In mid-June, believing Wife was going to flee with Son, Husband sought an order prohibiting Son's removal from Pakistan. On June 19, 2006, the SHC scheduled a hearing for June 27, and "in the meantime" the court ordered that Son not be removed from its jurisdiction. Wife and Son were detained by Pakistani immigration officials at the airport, although she claimed she was simply taking him on a preplanned family vacation to Turkey. Another order was issued June 27, 2006, continuing the matter until July 5, 2006, and retaining the nonremoval order in effect "in the meanwhile."[8]

On July 12, 2006, the SHC, in accordance with the parties' agreement, ordered supervised visits for two hours each week between Husband and Son, to be conducted at the office of Wife's attorney in Karachi. There was no explicit nonremoval clause in the July 2006 Order. According to Wife, this arrangement continued for approximately 15 months.

---

In September 2004, Husband sought to have the December 2003 Order recalled by the district court in Karachi, but that request was dismissed on January 29, 2005. Husband then petitioned the Sindh High Court (SHC) in April 2005 (No. 223/2005) to set aside the order of January 29, 2005.

In October 2004, Husband also filed a habeas corpus petition in the SHC (No. 170/2004), seeking to regain custody of Son, which was dismissed on December 23, 2004.

[7] Wife alleges that Husband, along with three or four armed accomplices, tried to kidnap Son in October 2005 and that shots were fired during the attempt. According to Wife, Husband then fled Pakistan to avoid being arrested for attempted murder and kidnapping. Husband denies this account, claiming that he was assaulted and stoned by Wife and her siblings when he came to Wife's family home to visit Son. In January 2007, the criminal charges against Husband were dropped by Wife and her family, resulting in his acquittal.

[8] Wife claims the June 19, 2006 order was violated when Husband brought Son back to California, while Husband argues that the order was only temporary. We read the order in accordance with Husband's interpretation, but the Pakistani courts evidently consider the earlier nonremoval orders, as well as the one issued on October 29, 2007, to have been violated.

Then, Wife alleges that on October 26, 2007, Husband and three armed accomplices kidnapped Son from outside her lawyer's office in Karachi, as she brought him for the scheduled visitation. An order prohibiting Son's removal from Pakistan was issued by the SHC on October 29, 2007, which was followed by a warrant for Husband's arrest and placement of Son's and Husband's names on an "Exit Control List" to prevent them from leaving Pakistan. Husband somehow escaped the country and returned to California with Son. On April 18, 2008, the SHC authorized issuance of an INTERPOL "red notice" for Husband's arrest.

Husband, for his part, claims the seizure of Son was perfectly legal and was conducted by the Pakistani Federal Investigation Agency (FIA), which was enforcing an INTERPOL "yellow notice" issued as a result of the abduction charges against Wife in California. Husband declares that he and Son left Pakistan with the cooperation of the United States government and arrived back in the United States on November 21, 2007.

Either way, Son was brought back to California and kept at an undisclosed location. He now lives with Husband in California and attends school here.

On January 8, 2008, Wife registered the July 2006 Order from Pakistan in Alameda County Superior Court in No. HF08-364710 (Registration Action), and shortly thereafter filed an order to show cause to modify the earlier California custody order and to enforce the foreign order under section 3405. (See also §§ 3443, 3446.) The trial court consolidated the Registration Action with the Dissolution Action.

A hearing was held on the Registration Action on February 19, 2008. On February 21, 2008, the court denied registration and enforcement of the July 2006 Order, and refused to take judicial notice of unauthenticated documents from Pakistan filed by both parties. In that order the court found that (1) its jurisdiction under the UCCJEA and the issue of service were litigated and resolved in Husband's favor in the Dissolution Action; (2) the 2003 Custody Order entered in that action, and subsequently incorporated into the January 21, 2005 default judgment, was valid and enforceable; (3) Wife's then counsel was served with notice of entry of judgment; and (4) the time limitations for seeking relief from entry of a default judgment had passed.

In March 2008, Wife resubmitted most of the Pakistani court documents with proper authentication. After further briefing and argument, the parties agreed to have the matter decided on declarations rather than live testimony.

The court issued a written order on May 12, 2008, reaffirming its findings in the February 21 order and concluding that California's jurisdiction under the UCCJEA was exclusive and continuing, that it did not lose jurisdiction by reason of Husband's prolonged presence in Pakistan or the loss of "significant connections" with Son, that the alleged kidnapping of Son by Husband did not require California to relinquish jurisdiction, and that California would not voluntarily decline jurisdiction as an inconvenient forum.[9] The court's lengthy and well-reasoned order will be cited further in our opinion, as we affirm its conclusions.

## DISCUSSION

### I. *The Legal Standards*

Thankfully, it is not our task to decide all of the hotly contested factual issues between these warring parties. We are, however, asked to decide between two core concepts in child custody jurisdiction that appear to compete in this case, namely "home state" jurisdiction and "exclusive, continuing" jurisdiction. (§§ 3421, 3422.) We conclude the method for resolving any conflict between these legal principles is dictated by the UCCJEA, and decide the case accordingly.

■ The exclusive method of determining subject matter jurisdiction in custody cases is the UCCJEA. (§ 3421, subd. (b).) Under the UCCJEA, a California court must "treat a foreign country as if it were a state of the United States for the purpose of" determining jurisdiction. (§ 3405, subd. (a).) Moreover, with limited exception, "a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this part must be recognized and enforced" in California. (§ 3405, subd. (b); see also § 3443; *In re Marriage of Zierenberg* (1992) 11 Cal.App.4th 1436, 1442–1443 [16 Cal.Rptr.2d 238] [Puerto Rico custody order entitled to enforcement]; *In re Marriage of Malak* (1986) 182 Cal.App.3d 1018, 1026–1029 [227 Cal.Rptr. 841] [Lebanese custody order enforced in California]; but see *In re Marriage of Sareen* (2007) 153 Cal.App.4th 371, 377 [62 Cal.Rptr.3d 687] [California not required to enforce prior custody order from India, where jurisdiction was not in substantial conformity with UCCJEA standards].)

---

[9] In light of the trial court's ruling that it has exclusive, continuing jurisdiction of the child custody issue, it retained jurisdiction for purposes of further custody proceedings in the Dissolution Action while the appeal is pending on the Registration Action.

Subject matter jurisdiction either exists or does not exist at the time an action is commenced. (*Adoption of Zachariah K.* (1992) 6 Cal.App.4th 1025, 1035 [8 Cal.Rptr.2d 423].) There is no provision in the UCCJEA for jurisdiction by reason of the presence of the parties or by stipulation, consent, waiver, or estoppel. (*Adoption of Zachariah K.*, at p. 1035; *In re Marriage of Sareen, supra*, 153 Cal.App.4th at p. 376; *In re Marriage of Newsome* (1998) 68 Cal.App.4th 949, 955–956 [80 Cal.Rptr.2d 555].)

■ Under the UCCJEA, the state with absolute priority to render an initial child custody determination is the child's home state on the date of commencement of the first custody proceeding or, alternatively, the state which had been his home state within six months before commencement if the child is absent from the home state but a parent continues to live there. (§ 3421, subd. (a)(1).) " 'Home state' " means "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." (§ 3402, subd. (g).)

■ A court that properly acquires initial jurisdiction has exclusive, continuing jurisdiction unless one of two subsequent events occurs: (1) a court of the issuing state itself determines that "neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships," or (2) there is a judicial determination by either the issuing state or any other state that "the child, the child's parents, and any person acting as a parent do not presently reside in" the issuing state. (§ 3422, subd. (a)(1), (2).)

■ "The UCCJEA takes a strict 'first in time' approach to jurisdiction. Basically, subject to exceptions not applicable here [citations], once the court of an appropriate state (Fam. Code, § 3421, subd. (a)) has made a 'child custody determination,' that court obtains 'exclusive, continuing jurisdiction . . . .' (Fam. Code, § 3422, subd. (a).) The court of another state: [¶] (a) Cannot modify the child custody determination (Fam. Code, §§ 3421, subd. (b), 3422, subd. (a), 3423, 3446, subd. (b)); [and] [¶] (b) Must enforce the child custody determination (Fam. Code, §§ 3443, 3445, 3446, 3448, 3453) . . . ." (*In re Marriage of Paillier* (2006) 144 Cal.App.4th 461, 469 [50 Cal.Rptr.3d 459].)

Wife urges us to consider the overriding interest of the child in making our decision on jurisdiction. She asks us to take into account the trauma Son must have suffered in being torn away from his mother, his familiar culture, and his extended family in Pakistan, where he had spent most of his first five years.

■ While we are not unconcerned with the child's best interests,[10] the UCCJEA in fact "eliminates the term 'best interests' from the statutory language to clearly distinguish between the jurisdictional standards and substantive standards relating to child custody and visitation." (10 Witkin, Summary of Cal. Law (10th ed. 2005) Parent and Child, § 158(2)(e), p. 230; see also 9 pt. IA West's U. Laws Ann. (1999) Prefatory Note to UCCJEA, p. 652 & com. to § 201, p. 672.)[11] As the trial court aptly noted, "The issue currently before the court . . . is not what is in the best interest of the child. Rather the issue now before the court is which jurisdiction has the *authority* to engage in that inquiry and adjudicate the competing claims."

With respect to purely factual findings, we will defer to the trial court's assessment of the parties' credibility, even though the determination was made on declarations rather than live testimony. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [243 Cal.Rptr. 902, 749 P.2d 339]; *Khan v. Superior Court* (1988) 204 Cal.App.3d 1168, 1170–1171, fn. 1 [251 Cal.Rptr. 815].) " 'In a matter in which an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contentions of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom. [Citation.]' " (*Necessary v. Necessary* (1962) 207 Cal.App.2d 780, 782 [24 Cal.Rptr. 713].) Since subject matter jurisdiction is at issue, however, we are "not bound by the trial court's findings and may independently weigh the jurisdictional facts." (*Brossoit v. Brossoit* (1995) 31 Cal.App.4th 361, 367 [36 Cal.Rptr.2d 919]; see *In re Marriage of Arnold & Cully* (1990) 222 Cal.App.3d 499, 502 [271 Cal.Rptr. 624].)

II. *As Son's Home State, California Properly Assumed Initial Jurisdiction Over the Custody Dispute in 2003, Thereby Acquiring Exclusive, Continuing Jurisdiction Over the Custody Issue.*

The trial court found that California properly assumed initial UCCJEA jurisdiction over the child custody matter as Son's home state when the

---

[10] Son is receiving court-ordered therapy, and has court-appointed counsel to represent his interests.

[11] " ' "Reports of commissions which have proposed statutes that are subsequently adopted are entitled to substantial weight in construing the statutes." ' " (*Smith v. Superior Court* (1977) 68 Cal.App.3d 457, 463 [137 Cal.Rptr. 348], citations omitted.)

Dissolution Action was commenced.[12] That initial assertion of jurisdiction gave California exclusive, continuing jurisdiction under section 3422.[13]

Nevertheless, Wife argues that the California dissolution judgment is void or should be set aside on three grounds: (1) she was deprived of due process and notice by the procedures employed; (2) Husband failed to notify the California court of the proceedings in Pakistan, as required by section 3429, subdivision (d); and (3) Husband made misrepresentations in the Dissolution Action that acted as a fraud upon the court.

A. *Wife was not deprived of due process in the proceedings leading to judgment in the Dissolution Action.*

The trial court found the due process and notice issues had been litigated in the Dissolution Action and that the time had expired for Wife to contest those matters. Nevertheless, we discuss the merits to dispel Wife's claim of a void judgment.

■ "The requirements of due process of law are met in a child custody proceeding when, in a court having subject matter jurisdiction over the dispute, the out-of-state parent is given notice and an opportunity to be heard. Personal jurisdiction over the parents is not required to make a binding custody determination, and a custody decision made in conformity with due process requirements is entitled to recognition by other states . . . ." (*In re*

---

[12] At the hearing on September 30, 2003, Wife's counsel argued that California was not Son's home state because he did not physically reside here for a full six months before he was taken to Pakistan. We disagree, and affirm the trial court's finding that California was Son's home state.

Son was five months old when Wife took him to Pakistan. On the date he turned six months of age (Mar. 16, 2003), he was in Pakistan, staying at his maternal grandparents' house. But both parents intended for Son to return to California shortly thereafter. Because the trip at least began as a "temporary absence," under any applicable standard, the time Son spent in Pakistan before Wife informed Husband that she would not return to California should be considered part of Son's period of residence in California. (§ 3402, subd. (g); *In re Frost* (1997) 289 Ill.App.3d 95 [224 Ill.Dec. 409, 681 N.E.2d 1030, 1034–1036]; *Koons v. Koons* (N.Y.App.Div. 1994) 161 Misc.2d 842 [615 N.Y.S.2d 563, 566–567]; see also *In re S.M.* (Mo.Ct.App. 1997) 938 S.W.2d 910, 917–918 [applying "totality of the circumstances" approach].)

Husband testified that Wife did not tell him until the end of May 2003 that she did not plan to return with Son. Wife herself admits she had not yet decided whether to return to California until after Husband made the trip to Pakistan.

[13] Regardless of whether California was Son's home state, it certainly had significant connection jurisdiction. (§ 3421, subd. (a)(2).) Thus, the California order still had priority as the first-in-time order, for no other state, including Pakistan, could have claimed home state status when Husband filed the Dissolution Action. "Under this Act, the simultaneous proceedings problem will arise only when there is no home State, no State with exclusive, continuing jurisdiction and more than one significant connection State. For those cases, this section retains the 'first in time' rule of the UCCJA." (9 pt. IA West's U. Laws Ann., *supra*, com. to § 206, p. 681.)

*Marriage of Torres* (1998) 62 Cal.App.4th 1367, 1378 [73 Cal.Rptr.2d 344]; see also §§ 3406, 3408, 3421, subd. (c).)

Wife acknowledges that she "received" the summons and order to show cause on September 16, 2003.[14] And the proceedings below leave no doubt that she had actual notice of the hearing on the order to show cause.

■ Wife now claims, however, that she had no actual notice of the November 4 hearing and that "actual notice" was required under section 3408. In fact, the statute requires only notice *"reasonably calculated to give actual notice."* (§ 3408, subd. (a), italics added.) Notifying Wife's attorney of record in open court clearly satisfied the statute. The trial court properly found that Wife had an opportunity to be heard and simply failed to avail herself of it.[15]

Wife also claims she had no knowledge of the dissolution judgment until December 18, 2007, despite the fact that she was represented by counsel throughout the default proceedings. The court itself served Wife's attorney with notice of entry of default and entry of judgment—notice necessarily imputed to wife. (Civ. Code, § 2332; *Rauer v. Hertweck* (1917) 175 Cal. 278, 281 [165 P. 946] [attorney's knowledge of entry of judgment is in law knowledge of client].) There was ample support for the trial court's finding that Wife's attorney was properly served and "time has run out for any challenge on the various alternatives that might theoretically have been available to her."[16] Although Wife appeals to the court's inherent power to set

---

[14] Wife asserts in a footnote that she was never personally served in the Dissolution Action. The record contains proof of personal service on September 16, 2003, signed by a member of the bar in Pakistan. Wife initially told the district attorney's investigator that she was served by express mail, and her first attorney, Margaret Gannon, filed a declaration (on hearsay) that Wife had not been personally served. However, in her own declarations Wife says only that she "received" the documents on September 16, 2003. Thus, we have before us no admissible statement under oath that Wife was not personally served. (See also *In re Marriage of Torres, supra,* 62 Cal.App.4th at p. 1380 [service by United Parcel Service next day delivery was sufficient under predecessor to § 3408, subd. (a)].)

[15] Wife claims the denial of a telephonic appearance compromised her due process rights and the right to be heard under section 3425. Telephonic appearance is discretionary. (§ 3411, subd. (b).) The court did not abuse its discretion in denying the request, given that Wife was withholding the child from his home state in violation of a court order. Wife's counsel did not object to the denial of a telephonic appearance as a due process violation or on any other ground.

[16] Wife also claims she did not receive notice of the default prove-up hearings on November 19, 2004, January 7, 2005, January 14, 2005, and January 21, 2005. The entry of her default terminated Wife's "rights to take any further affirmative steps in the litigation until either its default is set aside or a default judgment is entered." (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 385 [202 Cal.Rptr. 204].) Any failure to notify her of the prove-up proceedings could not deprive her of due process.

aside a void judgment at any time, the judgment was not void for lack of subject matter jurisdiction or failure to comply with due process.

> B. *Husband's failure to keep the court informed of developments in custody proceedings in Pakistan did not require California to relinquish jurisdiction.*

Wife claims the custody order in the Dissolution Action should also be set aside because Husband did not comply with section 3429, subdivision (d), which imposes upon each party a "continuing duty to inform the court of any proceeding in this or any other state that could affect the current proceeding."

Perhaps Husband could have provided the California court with more prompt notice of Wife's custody action in Pakistan and more details of the various Pakistani orders.[17] However, when Wife sought to modify the 2003 Custody Order on March 1, 2004, or alternatively to transfer jurisdiction to Pakistan, Husband did file a request for judicial notice, attaching multiple documents from the Pakistani proceedings, including the December 2003 Order and Husband's subsequent contempt proceeding against Wife. Thus, the court was aware of those proceedings before the final judgment of dissolution was entered. Neither party further updated the court about the various Pakistani actions during the default proceedings.

█ However, the absence of this information was not material to the court's assertion of jurisdiction or entry of default judgment. It is primarily the existence of prior-in-time proceedings of which the court must be apprised for jurisdictional purposes. (See *Zenide v. Superior Court* (1994) 22 Cal.App.4th 1287, 1295 [27 Cal.Rptr.2d 703]; §§ 3426, subd. (a), 3429, subd. (a).) Since California's custody order was first-in-time and was based on home state jurisdiction, and since Wife had been in violation of its custody orders for more than a year, it is unlikely the California court would have taken any different action even if it had been provided with more up-to-date details regarding the proceedings in Pakistan.

█ Section 3429 does not specify a remedy for a party's failure to comply with his or her continuing disclosure obligations. It certainly does not require the first-in-time court to relinquish jurisdiction. Moreover, since the

---

[17] Wife implies that Husband had knowledge of the Pakistani proceedings before the November 4 hearing in California, yet did not inform the California court. Husband did file papers in Pakistan in opposition to Wife's custody claim. There is some ambiguity, however, as to when the papers were filed because, although the verification is dated in October, the declaration itself refers to the November 5 order in California. Thus, it is not entirely clear whether Husband was aware of the pending custody claim in Pakistan before the November 4 hearing.

duty to inform the court of other proceedings rested equally with Wife, neither party should benefit from the mutual neglect of duty, if there was one.

### C. Husband's filings in California did not act as a fraud upon the court.

Wife claims the judgment of dissolution should be declared void because of alleged misrepresentations in Husband's court filings which amounted to a fraud upon the court. Specifically, Wife claims he accused her of taking Son from California "illegally" and "without [Husband's] permission," implying that she had kidnapped him. In context, though, Husband's statements were not misleading. He explained that Wife "told [him] she was only going on vacation and then refused to return home."

Husband's statements in his proposed judgment that Wife kept Son "hidden" in Pakistan and that he had not seen his son in "over one year" were not literally true. Nevertheless, Husband does contend that Wife kept Son cloistered away in her parents' home and deprived Husband of contact except on her own "unconscionably limited" terms, enforced by her family's private security guards. Even if Husband exaggerated the length of time since he had last seen Son, that was not material to the court's exercise of jurisdiction or its entry of default judgment. Given that Wife had filed no responsive pleading and had long been in knowing violation of a California court order, the exact date of last father-son contact was not material.[18]

### III. California Did Not Lose Exclusive, Continuing Jurisdiction Under Section 3422, Subdivision (a)(2) Due to Husband's Presence in Pakistan or the Litigation in Which He Engaged While in Pakistan.

### A. The concept of "exclusive, continuing jurisdiction" is an integral part of the UCCJEA, designed specifically to avoid concurrent jurisdiction and conflicting custody orders.

Wife argues vigorously that the motivating force behind the UCCJEA is to prevent parental kidnapping, and that our decision in this appeal must be guided by that principle. While that is certainly one of the UCCJEA's underlying objectives, it is not the only one. We have previously identified the primary purposes of its predecessor, the Uniform Child Custody Jurisdiction

---

[18] Wife also complains that Husband checked a box on the request for default form indicating there had been "no changes since the previous filing." This statement related to changes in the property declaration, not jurisdictional issues or other litigation.

Act (UCCJA),[19] as " ' "(1) preventing the harm done to children by shifting them from state to state to relitigate custody, and (2) preventing jurisdictional conflict between the states after a custody decree has been rendered." ' " (*Brossoit v. Brossoit, supra,* 31 Cal.App.4th at p. 370, quoting *Kumar v. Superior Court* (1982) 32 Cal.3d 689, 696 [186 Cal.Rptr. 772, 652 P.2d 1003] (*Kumar*); see also 9 pt. IA West's U. Laws Ann., *supra,* UCCJA, § 1, p. 271; former § 3401, subd. (a) [enacted by Stats. 1992, ch. 162, § 10, pp. 464, 553–554, repealed by Stats. 1999, ch. 867, § 2].) Thus, among the primary purposes of the uniform acts is to encourage states to respect and enforce the prior custody determinations of other states, as well as to avoid competing jurisdiction and conflicting decisions.

Wife argued in the trial court that on October 1, 2003, when she filed her action for custody in Pakistan, California and Pakistan had "concurrent jurisdiction." Such claim ignores the fact that a major aim of the UCCJEA is to *avoid* "concurrent jurisdiction."

Indeed, concurrent assertion of jurisdiction by more than one court was one of the chief problems that led to the enactment of the UCCJEA. The absence of a specific provision for continuing jurisdiction had "caused considerable confusion," with conflicting judicial interpretations and "a loss of uniformity among the States." (9 pt. IA West's U. Laws Ann., *supra,* com. to § 202, p. 674 & Prefatory Note to UCCJEA, p. 650.) Dissatisfied with the operation of the UCCJA, the National Conference of Commissioners on Uniform State Laws resolved to establish "exclusive, continuing jurisdiction" as one of the cornerstones of the UCCJEA,[20] making it one of the crucial ways in which the two regimes differ.[21] (10 Witkin, Summary of Cal. Law, *supra,* Parent and Child, §§ 158(2)(c), 173, pp. 230, 244–245; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2009) ¶¶ 7:125 to 7:127, pp. 7-46 to 7-48.1 (rev. # 1, 2009) (Hogoboom & King).)

Other provisions of the UCCJEA reinforce the drafters' intent to avoid competing forums and conflicting orders. Thus, section 3423 "complements" section 3422 by restricting the conditions under which one state may modify

---

[19] The UCCJEA became effective January 1, 2000, replacing the former UCCJA. (Stats. 1999, ch. 867, § 3.) Although decisions under the UCCJA are useful in interpreting the UCCJEA, the present case deals with some of the points of divergence between the two acts. Thus, cases decided under the UCCJA must be read with these differences in mind. (See *In re Marriage of Paillier, supra,* 144 Cal.App.4th at p. 469.)

[20] "[F]or the first time, [the UCCJEA] enunciates a standard of continuing jurisdiction . . . ," after "almost thirty years of litigation . . . produced substantial inconsistency in interpretation . . . ." (9 pt. IA West's U. Laws Ann., *supra,* Prefatory Note to UCCJEA, p. 650.) "This divergence of views [led] to simultaneous proceedings and conflicting custody orders." (*Id.* at p. 651.)

[21] California had actually recognized the concept of exclusive, continuing jurisdiction earlier, in *Kumar, supra,* 32 Cal.3d at p. 696.

the custody orders of another state. (9 pt. IA West's U. Laws Ann., *supra*, com. to § 203, p. 676.) The UCCJEA requires deference to another state's earlier issued custody determination in the absence of specified findings, thereby requiring at least a conscious, reasoned, and statutorily limited basis for asserting modification jurisdiction. And section 3426 provides, in substance, that a court "may not exercise its jurisdiction under this chapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this part . . . ." (§ 3426, subd. (a).)

■ More than once the drafters cited this triad of provisions as the central mechanism for avoiding competing forums and conflicting orders, thereby minimizing parents' motivation to snatch children and remove them to a different jurisdiction. (9 pt. IA West's U. Laws Ann., *supra*, com. to § 206, p. 681 & com. to § 208, p. 684.) These provisions, taken together, provide a comprehensive, integrated system designed to provide that one— and only one—court may exercise jurisdiction over custody determinations at any given time. (See Hogoboom & King, *supra*, ¶¶ 7:80.3, 7:87.1, 7:125, pp. 7-26, 7-31, 7-46 (rev. # 1, 2009).)

> B. *California did not lose exclusive, continuing jurisdiction because there was no contemporaneous judicial determination that both parents and the child had ceased residing in California.*

Wife argues that even if the California court properly exercised jurisdiction in the first instance, it lost jurisdiction under section 3422, subdivision (a)(2), which provides in significant part that "a court of this state that has made a child custody determination consistent with Section 3421 or 3423 has exclusive, continuing jurisdiction over the determination until . . . [¶] . . . [¶] . . . [a] court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state."

The parties disagree on the interpretation of section 3422. Wife argues that California lost jurisdiction as soon as Husband acquired a residence in Pakistan, essentially advocating the view that jurisdiction is self-terminating when the specified parties move out of the decree state. Accordingly, Wife goes to some length to prove that Husband "resided" for a substantial period in Pakistan from sometime in 2004 until October 2007, pointing out that he bought a house there and enjoyed regular visitation with Son. And, she argues, husband is estopped to deny residency in Karachi because he used a Karachi address on his pleadings in Pakistan.

Husband acknowledges that he visited Pakistan frequently, but insists he was there only to try to regain custody of Son and to keep in contact with him. Husband claims he stayed with his parents or friends while he was there. He claims the house in Karachi was purchased by his mother and is held in her name (Qamar Nurie). He never was employed in Pakistan, and never bought property or owned a car there. He always intended to return to California, not to move to Pakistan.

The trial court found that Wife's own assertions with respect to Husband's continuous residence in Karachi were without foundation. And we cannot conclude that Husband deceived the Pakistani courts into thinking he had abandoned his California residence. It was Wife who first listed Husband's address in Karachi when she sued him for custody of Son, even though she knew he lived in California. In his responsive pleading, Husband told the Guardian Court that he had not lived in Karachi since 1973 and that he worked in the Silicon Valley. Thus, at least as of December 2003, when Pakistan initially assumed jurisdiction, it was well aware that Husband lived in California. Using a Karachi address in his pleadings in Pakistan did not operate as an estoppel or mislead the Pakistani courts.

More importantly, the crucial question under the statute is not whether Husband "resided" in Pakistan, but whether he *stopped* residing in California. On that point, Husband claims he never stopped residing in California because he continuously owned a house here, which he kept for his own use and never rented out, even paying a gardener to maintain the grounds in his absence. He always maintained a car, telephones and a fax machine here, paid taxes and utilities here, and had built his career as an electrical engineer and marketing manager in the Silicon Valley. He has lived in California since 1983 and considers it his permanent home. We may infer from his declaration that he maintained furnishings and other personal possessions in his home in Fremont. We infer from the record that he physically resided in California at least from October 2005 to April 2006, and his residence here during other periods has not been precluded.[22] These factors convince us that Husband continuously maintained a residence in California despite his physical presence in Pakistan for prolonged periods. By contrast, none of the cases cited by Wife held that a parent was "not presently residing" in the decree state when he or she continued to maintain a fully functional household there.

Wife claims that by adopting this logic we ratify the error of the court below by essentially construing the phrase "do not presently reside" to mean

---

[22] Wife's Pakistani attorney filed a declaration saying that Husband did not pursue visitation rights from December 2004 until May 2005. Therefore, it is possible that Husband returned to California to live during that time.

"is not presently domiciled,"[23] an interpretation which has been rejected by out-of-state cases. Wife insists that the term "presently" must be given effect in the statute, and that it means continuing jurisdiction may be lost based on where the parties are "actually living," regardless of their volition or intent.[24] We perceive a different significance to the word "presently," namely that the determination of relocation must be made during the period of nonresidence in the decree state.

Whether one must have given up his "residence" or his "domicile" in California for the court to lose jurisdiction makes no difference to the outcome of this case. We are convinced that California is Husband's domicile. Under the facts of this case, we also conclude that he "presently resided" in California during the custody battle in Pakistan.

It is well established that a party may have more than one residence. (*In re Marriage of Amezquita & Archuleta, supra,* 101 Cal.App.4th at p. 1419.) Thus, Husband could have "presently resided" in Pakistan for some time while still maintaining a "present residence" in California. Under section 3422, subdivision (a)(2), the decree state retains jurisdiction until all residential ties of the parties are abandoned. While a parent's bare intent to return to the decree state may not be sufficient for retention of jurisdiction if he has otherwise moved from the state, we hold that if he maintains a functioning residence in the decree state, available for his own use at all times, he continues to "presently reside" in that state.

We also agree with the trial court that a judicial determination that all parties no longer reside in the decree state is required to divest that state of continuing, exclusive jurisdiction. Indeed, the language of the statute would seem to admit of no other construction. It is not the parties' departure itself that terminates the decree state's exclusive, continuing jurisdiction. Rather, it is when a "court . . . determines" that all parties have ceased

---

[23] The trial court did interpret the statute as referring to domicile, citing a parallel provision in the Uniform Interstate Family Support Act (§ 4900 et seq.). (See § 4962; *In re Marriage of Amezquita & Archuleta* (2002) 101 Cal.App.4th 1415, 1419–1422 [124 Cal.Rptr.2d 887].) This interpretation is not supported by the drafters of the UCCJEA. "The phrase 'do not presently reside' is not used in the sense of a technical domicile. The fact that the original determination State still considers one parent a domiciliary does not prevent it from losing exclusive, continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the State." (9 pt. IA West's U. Laws Ann., *supra,* com. to § 202, p. 674.) However, the trial court expressly found that the same result would be reached if the phrase "do not presently reside" meant "residence" alone.

[24] *State of N.M., ex rel. CYFD v. Donna J.* (Ct.App. 2006) 139 N.M. 131 [129 P.3d 167, 171] (*Donna J.*), held that a woman who had killed her ex-husband "presently resided" where she was imprisoned, not where she had lived before incarceration. Wife also cites *In re S.W.* (2007) 148 Cal.App.4th 1501 [56 Cal.Rptr.3d 665], but that case construed section 3421, not section 3422, subdivision (a)(2) or section 3423, subdivision (b).

residing there that jurisdiction is lost. (§ 3422, subd. (a)(2).) Without such a finding either in Pakistan or California, the statutory condition terminating jurisdiction simply has not occurred.

While we have located no California case on point, we find cases from other states interpreting the UCCJEA to be instructive. *In re Lewin* (Tex.App. 2004) 149 S.W.3d 727, 736, held that a "court's exclusive continuing jurisdiction does not vanish immediately once all the parties leave the state. Rather, exclusive continuing jurisdiction remains with the court that made the initial child custody determination" until one of the two judicial determinations described in section 3422, subdivision (a) has been made. In *Lewin*, the father had abducted the child and taken her to Canada in the hope of obtaining a more favorable custody order. The Canadian court determined that he had " 'established residence [in Montreal] *after moving from Texas.*' " (149 S.W.3d at p. 737, italics added.)

Likewise, *Donna J., supra,* 129 P.3d at page 171, held that "the UCCJEA language specifically requires action by either the home or another state before exclusive, continuing jurisdiction in the home state ceases." There, the initial decree state was Texas, but the mother and child established permanent residence in New Mexico some months later. (*Id.* at p. 169.) The mother then returned to Texas, murdered the father, and went back home to New Mexico. (*Ibid.*) Although that left the only living litigants residing outside of Texas, there was no judicial determination of relocation until after mother had been arrested and incarcerated in Texas. (*Id.* at pp. 170–171.) At that point Texas asserted exclusive, continuing jurisdiction, because no judicial determination of relocation had been made while mother was still in New Mexico. (*Id.* at p. 171.)

The New Mexico court agreed, and explained the basis for this requirement: "Parents can easily move back and forth between states as Mother did after the Texas court's July 2001 order. An automatic loss of jurisdiction, without any factual determination, would add uncertainty, diminish the oversight ability of the courts, and increase conflicts between states. These results are contrary to the purposes of the UCCJEA." (*Donna J., supra,* 129 P.3d at p. 171.)

We agree with this analysis.[25] The drafters of the UCCJEA identified two specific problems that had occurred as a result of having no provision in the

---

[25] In so holding we part company with *In re Parentage, Parenting, and Support* (2007) 142 Wn.App. 297, 304–305 [174 P.3d 160, 164] which concluded, "It is the fact of relocation, rather than any formal finding, that controls . . . ." This was dictum, given that the Washington court's first-in-time domestic violence order had expired by its own terms when Montana asserted jurisdiction, and the Washington court had never acquired continuing, exclusive jurisdiction. (*Ibid.*)

UCCJA regarding continuing exclusive jurisdiction. First, it had produced "conflicting custody decrees" and "different interpretations as to how long continuing jurisdiction lasts." (9 pt. IA West's U. Laws Ann., *supra*, Prefatory Note to UCCJEA, p. 651.) Second, it caused difficulty in determining whether "the State with continuing jurisdiction has relinquished it." (*Ibid.*) "The ambiguity regarding whether a court has declined jurisdiction can result in one court improperly exercising jurisdiction because it erroneously believes that the other court has declined jurisdiction." (*Ibid.*)

The requirement of a judicial determination under the UCCJEA is more than a procedural technicality. It reflects a deliberate effort to provide a clear end point to the decree state's jurisdiction, to prevent courts from treading on one another's jurisdiction, and to ensure that custody orders will remain fully enforceable until a court determines they are not. By requiring a modifying state to first determine whether all the parties have vacated the prior decree state, the UCCJEA forces the court to pay conscious deference to preexisting custody orders. This arrangement furthers the statutory demand that only one state exercise jurisdiction at any given time, thereby reducing the temptation to litigants to decide for themselves that they are free to disregard an earlier order.

Our conclusion is supported by the legislative history of section 3422. The Legislature said the UCCJEA "would prohibit modification of a custody decision made pursuant to this uniform act by the courts of another state in the absence of *specified determinations.*" (Legis. Counsel's Dig., Sen. Bill No. 668 (1999–2000 Reg. Sess.) Stats. 1999, ch. 867, italics added.)

Wife cites a number of out-of-state cases where jurisdiction was lost due to relocation of the parents and child without an express finding that all parties had relocated.[26] In those cases the UCCJEA modification provision was in effect in the modifying state, and the issue of the parties' present residence had been actually litigated. In such circumstances an appellate court might affirm the trial court's implicit finding of relocation based on substantial evidence before the trial court when it assumed modification jurisdiction.

Here, we have no reason to believe that the Pakistani courts gave any consideration at all to whether Husband had ceased residing in California.

---

[26] *In re T.J.D.W.* (2007) 182 N.C.App. 394 [642 S.E.2d 471, 473] (North Carolina appellate court determined that making a specific finding of relocation was "the better practice," but the trial court's failure to make an explicit finding was not fatal to jurisdiction where there was substantial evidence that all parties had, in fact, left South Carolina); *Button v. Waite* (Tenn. 2006) 208 S.W.3d 366, 370–372 (Tennessee had modification jurisdiction where it was "undisputed" that the child and both parents had left Hawaii); *Staats v. McKinnon* (Tenn.Ct.App. 2006) 206 S.W.3d 532, 549 (assertion of modification jurisdiction was proper where "undisputed facts" showed that all parties had left Florida).

And there certainly was no evidentiary hearing on that point. Therefore, we will not read into any of the foreign orders an implicit finding that Husband had relocated to Pakistan. Regardless of whether an express factual finding of relocation must be made, there must be, at the very least, a judicial determination of its own jurisdiction by a court that adheres to the UCCJEA standards for modification jurisdiction.

■■■ As noted above, another problem with Wife's position is that there was no *contemporaneous* judicial determination that the parties had stopped residing in California. Any judicial determination that parties do not "presently reside" in an earlier decree state must be made while the parties are nonresident. (See *In re A.B.A.M.* (2004) 322 Mont. 406 [96 P.3d 1139, 1142–1143] [Pennsylvania court determined that father had moved to Washington when it assumed modification jurisdiction, even though he subsequently returned to Montana].) Wife asks the California court now to make a determination that at some point in the past all three parties had ceased "presently residing" in California. But of course, Husband and Son do "presently reside" in California, and there is no reason for California to forfeit jurisdiction now. To hold that a California court loses jurisdiction because at some point in the past all parties had ceased residing here would mangle the drafters' use of the phrase "presently reside"—not to mention substantially enlarge the scope of the statutory exception to continuing jurisdiction.[27]

C. *Even if Pakistan became Son's home state at some point after the California court asserted jurisdiction, Pakistan did not acquire modification jurisdiction under UCCJEA principles.*

Wife emphasizes the importance of "home state" jurisdiction, and insists that Pakistan became Son's home state, even as California lost connections entitling it to continuing jurisdiction. She claims that home state jurisdiction is "paramount" under the UCCJEA because it is ultimately in the child's best interests for that state to make the custody determination.

---

[27] There is some support for Wife's position that all parties' absence from the decree state may terminate jurisdiction, even if one of them later returns. "Exclusive, continuing jurisdiction is not reestablished if, after the child, the parents, and all persons acting as parents leave the State, the non-custodial parent returns. As subsection (b) provides, once a State has lost exclusive, continuing jurisdiction, it can modify its own determination only if it has jurisdiction under the standards of Section 201 [§ 3421]. If another State acquires exclusive continuing jurisdiction under this section, then its orders cannot be modified even if this State has once again become the home State of the child." (9 pt. IA West's U. Laws Ann., *supra*, com. to § 202, p. 675.) In the comment's hypothetical, however, another court had acquired exclusive, continuing jurisdiction—and thus made the relocation determination—while the parties were nonresident. This comment does not convince us that jurisdiction is self-terminating under section 3422, subdivision (a)(2).

It is true that in initial custody determinations the child's home state is given absolute priority. (See § 3421, subd. (a)(1).) That is, in fact, the basis upon which California asserted initial jurisdiction in this case. However, it is not true that a change in the child's home state will automatically allow the new home state to acquire modification jurisdiction.

Wife argues that the December 2003 Order in Pakistan was a "valid modification of the earlier California order." (§ 3402, subd. (k).) She also contends that even if Pakistan was not Son's home state in 2003, as the trial court found, it had become his home state at least by July 12, 2006, when the SHC issued the order Wife seeks to enforce.[28]

Under sections 3422 and 3423, however, it is not enough that a jurisdiction qualify factually as the child's home state for the courts to exercise modification jurisdiction. Rather, the UCCJEA makes clear that a change in the child's home state after a court has initially assumed jurisdiction does not result in the shifting of jurisdiction to the new home state. The principles of the UCCJEA require a state at least to deferentially assess the status of any preexisting order before acting. For Pakistan to assume modification jurisdiction, either California would have had to voluntarily cede jurisdiction (which it did not), or else the Pakistani court would have had to find that "the child, the child's parents, and any person acting as a parent do not presently reside" in California. (§ 3423, subds. (a), (b).)

Not only was that finding never made, but there was no substantial evidence to support such a finding on October 1, 2003, when Wife's custody action was commenced in Pakistan.[29] (§§ 3402, subds. (e), (g), 3421, subd. (a)(1).) Nor was there when the December 2003 Order was filed, as Husband was still living and working in California. Indeed, even by the time the July 2006 Order was issued, there would have been no basis for Pakistan to assume modification jurisdiction. Husband had evidently been in California from October 2005 until April 2006. That he was in Pakistan from April until mid-July 2006 does not provide a substantial basis for concluding that he was

---

[28] Wife also argues that California had lost subject matter jurisdiction by January 21, 2005, when the default judgment was entered, thus making the dissolution judgment void. There is no substantial evidence that Husband had stopped residing in California at that time. Husband had voluntarily terminated visitation with Son in December 2004 and did not again pursue visitation rights until May 2005. Therefore, we cannot conclude as a factual matter that Husband was not "presently residing" in California during that time or that California had lost significant connections with Son.

[29] Jurisdiction is determined on the date an action is commenced, not at the time each individual visitation order is issued. It appears that the July 2006 Order can be traced back to Pakistan's original assumption of jurisdiction in 2003.

not "presently residing" in California.[30] In short, Wife cannot point to any specific court order issued at a time when the Pakistani courts would have been justified in exercising modification jurisdiction in compliance with UCCJEA principles.

██ Wife cites a number of cases that place so much importance on home state jurisdiction that they seem to endorse a view of wandering jurisdiction, perhaps even suggesting that jurisdiction should be ceded, on inconvenient forum or other grounds, to the new home state whenever the child's residence changes for a substantial period. However, all of these cases were decided under the UCCJA, before the principle of continuing, exclusive jurisdiction had been incorporated into our statutes. To the extent Wife's cases run counter to that principle, we must read them with some skepticism,[31] as the legislative history of California's adoption of the UCCJEA expressly shows: ". . . [T]he UCCJA . . . allows jurisdiction to shift if the initial ground for taking jurisdiction ceases to exist. Thus, if a state takes jurisdiction over a child custody dispute because it is the home state of the child and the child subsequently moves to a new state, jurisdiction can shift to the new home state, even if one parent remains in the child's original home state. [¶] This bill provides for exclusive continuing jurisdiction for the state that entered the decree until every party to the dispute has exited that state." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 668 (1999–2000 Reg. Sess.) as amended Apr. 12, 1999, pp. 2–3.)

---

[30] Even in the July 2006 Order that Wife seeks to enforce, the court instructed Husband that "[i]n case [he] leaves the country he shall inform [Wife's attorney in Pakistan and the visitation monitor] in writing of his non-availability. On his return from abroad he will again intimate [those individuals] and upon then [sic] the aforesaid arrangement shall again start." It thus appears that the SHC was aware in July 2006 that Husband did not spend all of his time in Pakistan, and took into account his traveling "abroad" in issuing the visitation order.

[31] See, e.g., *Hafer v. Superior Court* (1981) 126 Cal.App.3d 856, 862, 864, 866 [179 Cal.Rptr. 132] (California should have declined modification jurisdiction of its own prior custody order because children had lived with father in Idaho for three years, even though mother still lived in California); *Bosse v. Superior Court* (1979) 89 Cal.App.3d 440, 443–445 [152 Cal.Rptr. 665] (California court which had exercised initial custody jurisdiction should have declined to modify its own earlier decree on inconvenient forum grounds because the custodial parent had moved with the children to Montana for more than two years, even though the noncustodial parent continued to live in California); *Clark v. Superior Court* (1977) 73 Cal.App.3d 298, 300–301 [140 Cal.Rptr. 709] (California should have ceded jurisdiction on grounds of inconvenient forum to Oregon, the children's new home state, even though the noncustodial parent continued to reside in California).

Other cases cited by Wife are distinguishable because California was not the home state when the action was commenced. (E.g., *Plas v. Superior Court* (1984) 155 Cal.App.3d 1008, 1013–1017 [202 Cal.Rptr. 490] [because child's home state was France, California should not have exercised initial jurisdiction under the "significant connections" test]; *In re Marriage of Newsome, supra,* 68 Cal.App.4th at p. 959 [California should have declined custody jurisdiction in dissolution action where children had moved to Texas with their mother three years before dissolution action was filed].)

Because we consider the concept of continuing, exclusive jurisdiction to be one of the most fundamental and important changes implemented by the UCCJEA, we decline to follow cases that would undermine that concept.

 D. *Husband's litigation in Pakistan did not divest California of continuing, exclusive jurisdiction, and Pakistan's exercise of jurisdiction was not in substantial conformity with UCCJEA principles.*

As discussed above, the parties engaged in significant litigation in Pakistan involving custody and visitation issues. These actions all had their genesis in Wife's initial attempt to gain custody of Son *after* she had been served with the California summons and ex parte order awarding custody to Husband. This is precisely the kind of forum shopping the UCCJEA deplores. Although we have already determined that California had exclusive, continuing jurisdiction, we alternatively hold that the July 2006 Order was not enforceable because Pakistan's jurisdiction was not exercised in substantial conformity with UCCJEA principles.

The Pakistani Guardian Court initially declined to exercise jurisdiction, explaining: "[S]ufficient evidence has been filed on the record to show that the [custody] Application filed by the [Husband] before the superior court of California USA was much earlier to the filing of the present [custody] Application and the same has already been decided by the competent court of California USA regarding the same issue between the same parties. . . . Although the minor is presently residing in Karachi Pakistan but admittedly the minor was born in the state of California USA which is home state of the minor and the habitual residence of the minor is the United States, state of California, [County] of Alameda. It shows that the ordinary residence of the minor is USA and not Pakistan, whereas [u]nder [Pakistani law a custody application] can be filed where the minor ordinarily resides. Hence . . . this court has no jurisdiction to entertain the present [custody] Application."

In spite of this clear analysis, Wife asserts that Pakistan gained jurisdiction two weeks later because she and Husband entered into the 2003 Compromise. As the trial court noted, "it is unclear how a compromise regulating visitation pending the parents' return to California changed [the Guardian Court's] analysis."[32]

---

[32] One of the factors considered in whether a foreign custody decree is enforceable is "[w]hether the court that issued the determination identified the jurisdictional basis it relied upon in exercising jurisdiction and, if so, what the basis was." (§ 3448, subd. (b)(1).) The Pakistani decrees lack such jurisdictional findings.

As the trial court found, Pakistan appears to have asserted jurisdiction based on the parties' consent. This view is confirmed by subsequent observations in the Pakistani court filings, that Husband had "surrendered" or "submitted" to Pakistan's jurisdiction. However, as noted, subject matter jurisdiction cannot be created by consent. (*Adoption of Zachariah K., supra*, 6 Cal.App.4th at p. 1035; *In re Marriage of Sareen, supra*, 153 Cal.App.4th at p. 376; *In re Marriage of Newsome, supra*, 68 Cal.App.4th at pp. 955–956.)

 Wife cites cases apparently intended to convince us that consent, coexisting with other factual grounds for jurisdiction, may create an enforceable order.[33] We are unpersuaded. None of these cases requires California to divest itself of subject matter jurisdiction in deference to Pakistan's December 2003 Order. Even if consent to jurisdiction would otherwise be honored, it need not be if "the judgment substantially infringes on the authority of another tribunal or governmental agency . . . ." (*Peery v. Superior Court* (1985) 174 Cal.App.3d 1085, 1094 [219 Cal.Rptr. 882].) Clearly, Pakistan's assumption of jurisdiction in 2003 conflicted with California's recently issued 2003 Custody Order. We agree with the trial court that all subsequent custody orders in Pakistan derived from this initial assertion of jurisdiction.

Further, and as the trial court also observed, "The problem with relying on consent . . . is that, even if that were a viable ground under the UCCJEA, the underlying consent reflected in the 2003 Compromise was premised on the parties' imminent return to California. There is no basis for viewing [Husband's] consent as consent to terminate this court's exclusive and continuing jurisdiction." To the extent the 2003 Compromise reflects a consent to jurisdiction, it appears to invoke a California forum by requiring Husband to file the 2003 Compromise with the California court and by providing Wife with recourse for domestic violence under California law.[34]

---

[33] Wife's cases involved an express stipulation to the jurisdiction of a particular court (*Daves v. Daves* (1985) 173 Cal.App.3d 97, 107 [218 Cal.Rptr. 879]; *Knabe v. Brister* (2007) 154 Cal.App.4th 1316, 1321, 1326–1327 [65 Cal.Rptr.3d 493]); initial pleadings which themselves contained unrebutted factual allegations that gave the court subject matter jurisdiction (*In re Marriage of Hinman* (1992) 6 Cal.App.4th 711, 716 [8 Cal.Rptr.2d 245]; *In re Marriage of Halpern* (1982) 133 Cal.App.3d 297, 309–310 [184 Cal.Rptr. 740]); events that allowed a court which had later-acquired jurisdiction to retain it (*In re Janette H.* (1987) 196 Cal.App.3d 1421, 1427–1428, 1431 [242 Cal.Rptr. 567] [father died before entry of divorce judgment in first-filed action; child's new home state properly assumed jurisdiction with mother's consent]); or circumstances that gave the court jurisdiction regardless of consent (*Smith v. Superior Court, supra*, 68 Cal.App.3d at pp. 463–465 [California had continuing jurisdiction as decree state, where father continued to live]).

[34] We also reject Wife's contention that Husband cannot deny Pakistan's jurisdiction because he participated in judicial proceedings there for "nearly four years" without challenging its jurisdiction. This is a distortion of the record. Husband, in fact, challenged the jurisdiction of the Pakistani courts in several court filings. We cannot conclude that, because

*In re Marriage of Sareen* involved a custody order from India, which had exercised jurisdiction based on the parties' presence just nine days after they arrived in that country. The Third District Court of Appeal assumed jurisdiction was proper under Indian law, but held that such a tenuous connection with the forum would not meet the UCCJEA jurisdictional requirements. The court therefore refused to enforce the foreign decree, even though it was first in time. (*In re Marriage of Sareen, supra*, 153 Cal.App.4th at p. 377.)

While the length of time Son was in Pakistan was greater in this case (and therefore the factual basis for jurisdiction was stronger), Pakistan's assumption of jurisdiction clearly was not an exercise of *initial* jurisdiction. Rather, if Pakistan could assume jurisdiction at all, it would have to have been either modification jurisdiction or temporary emergency jurisdiction. (§§ 3423, 3424.) If it was the latter, then its jurisdiction would have expired long before the July 2006 Order was entered.[35] If it was the former, as Wife has asserted, then Pakistan did not exercise jurisdiction substantially in conformity with UCCJEA principles, as it did not defer to the continuing jurisdiction of California and did not make the findings necessary to terminate California's jurisdiction.

■■■ We conclude that the July 2006 Order did not substantially comply with UCCJEA principles and need not be enforced by a California court. (§§ 3405, 3443, 3446; see also *Brossoit v. Brossoit, supra*, 31 Cal.App.4th at p. 368 [only out-of-state custody order in substantial conformity with UCCJA's jurisdictional principles need be enforced]; *Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 956 [92 Cal.Rptr.2d 182] [same].) In so holding, we conclude that the concepts of exclusive, continuing jurisdiction, restraint in exercising modification jurisdiction, and deference to prior-in-time decrees (except in limited circumstances) are among the key jurisdictional standards that must be adhered to by a foreign jurisdiction before its custody orders are entitled to enforcement in California. In other words, a party seeking to enforce a foreign custody order must show not only "factual circumstances in substantial conformity" (§ 3405, subd. (b)) with the initial jurisdictional requirements of section 3421, but also that the foreign order substantially conforms to the policies of enforcing prior decrees and avoiding conflicting jurisdiction embodied in sections 3422, 3423 and 3426.

---

Husband sought the Pakistani courts' help in establishing some sort of visitation privileges with Son, he thereby surrendered his claim that California had continuing jurisdiction over Son's custody.

[35] The trial court noted that Pakistan may have asserted jurisdiction in a manner similar to temporary emergency jurisdiction under section 3424. Wife therefore cites *In re Angel L.* (2008) 159 Cal.App.4th 1127, 1137–1140 [72 Cal.Rptr.3d 88], for the proposition that temporary emergency jurisdiction may "ripen" into home state jurisdiction. However, that case limited its holding to situations in which there was no preexisting custody order and no other custody proceedings that would create a jurisdictional conflict.

E. *Husband's failure to register and enforce the 2005 California dissolution judgment and custody order in Pakistan did not deprive California of jurisdiction.*

Although we said at the outset of the opinion that the lawyers left no legal stone unturned, Wife points out that Husband never registered in Pakistan the 2005 California dissolution judgment to seek direct enforcement of its custody provisions by the Pakistani courts. Wife insists that such an enforcement procedure, similar to our own under the UCCJEA (§§ 3441–3457), is available in Pakistan, and that Husband's failure to pursue that remedy shows that he voluntarily submitted to the jurisdiction of the Pakistani courts. The parties speculate about whether such an action would have been successful, with Husband declaring flatly, "There is no such procedure," and "[i]n Pakistan, California's order is not enforceable."[36]

Wife submitted the declaration of her attorney in Pakistan for the evident purpose of proving that such a remedy is available. The attorney did not, however, explain substantive Pakistani legal standards for enforcing foreign custody decrees; nor did Wife provide copies of Pakistani statutes or cases on this issue. While we are authorized to take judicial notice of "[t]he law of . . . foreign nations and public entities in foreign nations" (Evid. Code, § 452, subd. (f); see *id.*, § 453, subd. (b)), we decline to do so here because Wife has submitted insufficient evidence to enable us to determine with confidence either the procedure or the substantive rules Pakistan would employ. (See Evid. Code, § 311; Assem. Com. on Judiciary com., 29B pt. 1 West's Ann. Evid. Code (1995 ed.) foll. § 311, p. 65 [one reason why a court may be unable to determine applicable foreign law is "that the parties have not provided the court with sufficient information to make such determination"]; *In re Marriage of Paillier, supra*, 144 Cal.App.4th at p. 468.) Wife has failed to establish that Husband neglected to avail himself of a viable remedy in Pakistan, much less that any such failure should deprive California of jurisdiction. (Cf. *In re Marriage of Condon* (1998) 62 Cal.App.4th 533, 559–560 [73 Cal.Rptr.2d 33] [Australian law did not guarantee enforcement of California custody order].)

IV. *California Did Not Lose Jurisdiction Under Section 3422, Subdivision (a)(1) Based on a Lack of Substantial Evidence and Significant Connections in California.*

Wife claims California has also lost jurisdiction based on subdivision (a)(1) of section 3422, which provides that a court may lose exclusive,

---

[36] The parties agree that Pakistan is not a signatory of the Hague Convention on the Civil Aspects of International Child Abduction.

continuing jurisdiction if "A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships."

The statute unambiguously gives the decree state sole power to decide whether jurisdiction has been lost on this basis. The assessment of a state's "significant connections" with a child is made at the time the jurisdictional determination is made, rather than at the time of commencement of the proceeding. (*Haywood v. Superior Court, supra,* 77 Cal.App.4th at p. 955; Hogoboom & King, *supra,* ¶ 7:101, p. 7-35 (rev. # 1, 2008).) We understand this rule to have required the court below to assess California's connections to Son as of May 2008, when it ruled on Wife's jurisdictional challenge, rather than in June 2003, when the Dissolution Action was commenced, or January 2008, when Wife filed the Registration Action.

*Kumar* defined "significant connections" as continuing until the state "loses all or almost all connection with the child." (*Kumar, supra,* 32 Cal.3d at p. 699.) Jurisdiction continues "as long as the parent who is exercising visitation rights still lives in [the decree] state and the relationship between that parent and the child has not deteriorated to the point at which the exercise of jurisdiction would be unreasonable." (*Grahm v. Superior Court* (2005) 132 Cal.App.4th 1193, 1200 [34 Cal.Rptr.3d 270].)

Applying that standard, California did not lose significant connections with Son after the initial custody order was entered. Husband, who continued to reside in California, also made frequent visits to Pakistan to maintain contact with Son. In such a situation, Husband's continued residence in California gives this state a legitimate connection to the custody dispute, and Husband has not shown disinterest in maintaining contact with Son such that the state's connection to the child has been lost. California, after all, had issued an outstanding arrest warrant based on Wife's continuing unlawful retention of Son in Pakistan. The fact that the child was in the center of a continuing criminal investigation in this state shows that California retained a connection to him—and a legitimate concern for his welfare.

Moreover, regardless of how he got here, Son is now residing in California. He lives with his father in California, goes to school in this state, receives medical treatment, and sees a therapist here. Son has significant connections with the state and substantial evidence exists here with respect to his care and upbringing such that the courts of this state have a legitimate interest in deciding issues related to his custody.

Wife argues that "significant connections" cannot be created as a result of kidnap. But the trial court declined—and we decline—to determine the truth of Wife's kidnapping allegations on the basis of declarations alone. We also cannot ignore the fact that the deterioration of Son's connection to California was the direct result of Wife's willful disobedience of a California court order. A parent should not be allowed to unilaterally withhold a child from his home state in defiance of a valid court order, and then use the child's prolonged absence to argue that he has lost connection to the state.

We do not question that Pakistan also has a substantial connection to Son. Earlier in Son's life, Pakistan may, in fact, have been the site of more evidence concerning his well-being. The relevant inquiry, however, is not which jurisdiction has the most evidence or the most significant connection to the minor, but whether California has so thoroughly lost connection that an exercise of its jurisdiction would be "unreasonable." (*Grahm v. Superior Court, supra*, 132 Cal.App.4th at p. 1200.) Clearly, it has not.

V. *Even if Husband Wrongfully Removed Son from Pakistan, California Is Not Compelled to Relinquish Jurisdiction Under Section 3428 Where the "Unjustifiable Conduct" Was Not Causally Linked to the Court's Exercise of Jurisdiction over the Custody Issue.*

Wife, operating on the assumption that California had lost jurisdiction at some point between November 2003 and October 2007, argues that a parent's abduction of his child from the other parent cannot form the basis for establishing jurisdiction in the abductor's state of residence. While we agree in principle, we do not agree that is what happened here.

As we have explained, California never lost jurisdiction. Wife contends that California nevertheless was required to relinquish jurisdiction under section 3428, which provides, in part: "if a court of this state has jurisdiction under this part because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction . . . ."

The trial court rejected this argument without determining the merits of the kidnapping claim because the statute does not require it to relinquish jurisdiction properly acquired, but only to decline to accept jurisdiction if it is invoked as a result of wrongful conduct. Where, as here, the trial court's decision turns on the interpretation of the statute, we review the issue de novo. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54]; *People v. Akhile* (2008) 167 Cal.App.4th 558, 562–563 [84 Cal.Rptr.3d 236].)

We are, of course, deeply troubled by Wife's allegation that Husband kidnapped Son from her in Pakistan with the help of three armed gunmen. Husband has declared under oath, however, that he retrieved Son lawfully through the Pakistan FIA and with the assistance of the United States government.

■ Like the trial court, we conclude that the legislative choice of the word "because" in the above quoted portion of the statute is determinative. The statutory language leaves no room for doubt. "Unjustifiable conduct" requires a court to decline jurisdiction only when the court's jurisdiction is invoked as a result of unclean hands, not when one of the party's hands get dirty after jurisdiction has been properly asserted. This interpretation is not only consistent with the plain language of the statute, but with the intent of the drafters. (See 9 pt. IA West's U. Laws Ann., *supra*, com. to § 208, p. 684 ["If the conduct that *creates the jurisdiction* is unjustified, courts must decline to exercise jurisdiction that is inappropriately invoked by one of the parties." (Italics added.)].)

As a leading treatise observes, "Although § 3428 does not expressly say so, it seems primarily directed at a petitioning parent's wrongful taking of the child across state lines in an attempt to 'create' jurisdiction in a chosen forum." (Hogoboom & King, *supra*, ¶ 7:151.1, p. 7-59 (rev. # 1, 2005).) In this case, California was Son's home state at the time the Dissolution Action was filed and had assumed jurisdiction long before the alleged kidnapping. Since California did not acquire jurisdiction "because" of the alleged kidnapping, section 3428, by its terms, does not apply. None of the cases cited by Wife convinces us that California is required to relinquish jurisdiction.[37]

The trial court has wisely indicated its willingness to take the merits of the kidnapping and domestic violence allegations into account in considering whether the custody arrangement should be modified. These allegations do not, however, affect the California court's assumption of home state jurisdiction in 2003.

---

[37] Wife argues that *Hafer v. Superior Court, supra*, 126 Cal.App.3d at page 867, supports the view that a party's "unclean hands" divest a court of continuing jurisdiction under section 3428. *Hafer* was decided before the UCCJEA was adopted and is of dubious continuing precedential value.

*In re Marriage of Hopson* (1980) 110 Cal.App.3d 884, 898–899 [168 Cal.Rptr. 345] and *In re Marriage of Schwander* (1978) 79 Cal.App.3d 1013, 1015–1016, 1020–1022 [145 Cal.Rptr. 325], are both distinguishable in that the wrongdoing party invoked the custody of the court *after* the unjustifiable conduct, and the basis for jurisdiction (the children's presence) was a direct result of the abduction or wrongful withholding.

## VI. *The Court Did Not Abuse Its Discretion by Refusing to Relinquish Jurisdiction Under an Inconvenient Forum Analysis.*

Finally, Wife argues that even if California technically could retain jurisdiction, it should nevertheless cede jurisdiction to Pakistan because it is a more convenient forum. Whether a trial court stays its proceedings on that basis is purely discretionary, and the ruling will not be disturbed on appeal unless there was a clear abuse of discretion. (*In re Marriage of Kern* (1978) 87 Cal.App.3d 402, 410 [150 Cal.Rptr. 860]; see also *In re Stephanie M.* (1994) 7 Cal.4th 295, 312 [27 Cal.Rptr.2d 595, 867 P.2d 706].) " 'A trial court's exercise of discretion will be upheld if it is based on a "reasoned judgment" and complies with the ". . . legal principles and policies appropriate to the particular matter at issue." [Citations.]' " (*Pieri v. Superior Court* (1991) 1 Cal.App.4th 114, 122 [1 Cal.Rptr. 742].)

The trial court examined each of eight factors pertinent to the inconvenient forum decision under section 3427. We find its reasoning cogent and concise, and quote it in full:

"a. Whether [domestic violence] has occurred and which state may be in the best position to protect the parties and the child: There are allegations of [domestic violence] in this forum dating back to 2002–2003. Upon an appropriate application, this court is in a position to protect the alleged victim pending hearing on both the [domestic violence] issues and the custody issues. The court has no information suggesting that Pakistan is better suited to afford such protection.

"b. Length of time child has resided outside California: The minor has been outside California for over four years, and this may weigh on the scale in favor of Pakistan. On the other hand, the minor's lengthy absence from this forum has been due to W[ife]'s refusal to obey the prior orders of this court, and the court is reluctant to allow her to use this disobedience to her advantage. Moreover, the child is here now and available to this court.

"c. The distance between the two forums: The distance is as great as one could imagine, but it is unclear how this weighs in favor of one forum over the other.

"d. The financial hardship to the parties in litigating in one forum vs. the other: Each forum presents a hardship to one of the parties; however, there are tools available to this court to mitigate the financial hardship—e.g., section 2030 and 3412(c).

"e. Any agreement as to which state should assume jurisdiction: W[ife] might argue that the 2003 compromise reflects such an agreement, but on its

face it was an interim agreement in anticipation of the parties returning to California. Thus on balance it reflects an agreement to litigate in California rather than Pakistan.

"f. The nature/location of evidence including testimony from the child: Evidence is available in both jurisdictions, but the child is available here and the current therapist is here.[38] This factor tips toward California.

"g. The ability of each court to decide the matter expeditiously: Whatever the issues regarding custody and visitation, a final trial on the merits is available here within a matter of months. The only information regarding Pakistan is the record of the parties and the child being there for the better part of four years without a resolution. This may be because Pakistan only asserted temporary jurisdiction, but in any event on this record, this court concludes it offers the 'fastest track.'

"h. The familiarity of the court in each state with the facts: The Pakistani courts know more about the procedural wrangling of the past four years and have more ready access to the facts regarding the alleged kidnapping and other events that preceded it, and this factor may tip towards Pakistan. However, there are procedures available that might enable this court to receive the benefit of evidence available in Pakistan or even judicial proceedings in Pakistan leading to factual findings on key issues. (Fam. Code, § 3412(a)(1).)"

In light of this thoughtful analysis, we cannot say that the trial court abused its discretion in refusing to declare Pakistan a more convenient forum. A court should decline jurisdiction as an inconvenient forum only when there is concurrent jurisdiction elsewhere. (*Brossoit v. Brossoit, supra*, 31 Cal.App.4th at p. 371, fn. 4.) Here, as discussed, California had exclusive, continuing jurisdiction, and Pakistan had no modification jurisdiction under UCCJEA principles.

In *Pieri v. Superior Court* the court held that California was not required to cede jurisdiction to Switzerland, where the child and custodial parent resided. California was the initial decree state, there was evidence in this state regarding the noncustodial parent's ability to maintain contact with his son in the absence of a custody modification, and California had statutory means available to secure testimony from out-of-state witnesses. (*Pieri v. Superior Court, supra*, 1 Cal.App.4th at pp. 118–121.) Similar factors convince us that California need not and should not cede jurisdiction to Pakistan here.

---

[38] Wife discounts this factor because the therapist was not appointed for forensic purposes. Regardless of whether the therapist testifies, however, she can help Son to cope emotionally with the stress of his own role in the proceedings, and in combination with the court-appointed attorney, can ensure that the child's views are brought before the court untainted by parental pressure.

## DISPOSITION

The judgment is affirmed.[39]

Kline, P. J., and Lambden, J., concurred.

A petition for a rehearing was denied August 26, 2009, and appellant's petition for review by the Supreme Court was denied November 10, 2009, S176390.

---

[39] Exhibit A to respondent's brief is stricken. We deny Wife's request for judicial notice filed December 2, 2008. We have not relied on any exhibits submitted in the writ matter that postdated the trial court's order.